UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------

ROBERT CARROLL                                        **18-CV-667 (TJM/CFH)**

                Plaintiff,

    -against-

U.S. EQUITIES CORP, LINDA STRUMPF,
HAL SIEGEL, both personally and as owner of U.S.
Equities, DAVID WARSHALL, and
WING LAM.
                Defendants.

 -----------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF**
**OF MOTION TO DISMISS ON BEHALF OF U.S EQUITIES CORP.,**
**LINDA STRUMPF and HAL SIEGEL**

LINDA STRUMPF, ESQ.
Defendant Pro Se and
Attorney for Defendants U.S. Equities Corp. and
and Hal Siegel
Office and P.O. Address
69 Fox Run
South Salem, New York 10590
Ph: 212-566-6800
Fax: 212-566-6800
linda.strumpflaw@live.com

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I. Preliminary Statement…………………………………………………............... 1

II. Plaintiff's Allegations…………………………………………………............. 2

III.  Legal Standard………………………………………………………….. 5

IV.  Argument…………………………………………………………………... 7

    A.  Rooker-Feldman Bars The Claims in this Action…………………………………… 7

    B.  Res Judicata Applies………………………………………………… 11

    C.  Collateral Estoppel Bars Plaintiff's Claims…………………………………… 12

    D. Plaintiff Fails to Sate a Viable FDCPA Claim……………………………………… 13
        1.   Plaintiff Fails to Support His "Meaningful Attorney Involvement" Claim……………… 14

    E.  Plaintiff's RICO Claim Should Be Dismissed
        Based Upon Plaintiff's Failure to Include A RICO Statement……………………………… 14

    F.   Plaintiff's RICO Claim Should Be Dismissed
        For Failure to State a Cause of Action……………………………………… 15
        1.   Plaintiff Has Failed to Plead the Existence of a RICO Enterprise………………………… 16
        2.   Plaintiff Has Failed to Plead a Pattern of Racketeering Activity…………………………… 17
            a. Plaintiff Has Failed to Plead the Continuity Element
            of a RICO Claim……………………………………… 18
                1. Plaintiff Did Not Plead Closed-Ended Continuity……………………… 18
                2.  Plaintiff Cannot Establish Open-Ended Continuity……………………….. 20

            b.   Plaintiff Cannot Rely on Routine Court Filings as Predicate Acts……………… 21

    G.   Plaintiff's State Law Claims Should Be Dismissed…………………………………… 23
        In the Alternative, the State Law Claims Should be Dismissed on the Merits……………… 23

Conclusion………………………………………………………………….. 25

## I.   PRELIMINARY STATEMENT

As a result of Plaintiff Robert Carroll's failure to pay a debt, which he has never denied owing, Defendant U.S. Equities Corp. ("Equities"), through its attorney, Linda Strumpf, Esq. ("Strumpf") obtained a judgment against Plaintiff in Kingston City Court on February 2, 2009. Thereafter, in order to "effectuate a postjudgment judicial remedy" (15 U.S.C. § 1692c(b)) Strumpf served a restraining notice and information subpoena upon Plaintiff's bank, pursuant to CPLR §5222, and subsequently a bank execution pursuant to CPLR §5232. Prior to the commencement of this action, Plaintiff moved by order to show cause in the state court to vacate the judgment; however, his motion was denied, thus Defendants' conduct throughout the state action was proper.

This is an action purportedly seeking to recover under: (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (2) Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) & (d); (3) New York General Business Law ("GBL") § 349; (4) New York Judiciary Law § 487; and (5) malicious prosecution.

Defendants Linda Strumpf, U.S. Equities Corp and Hal Siegel ("Defendants") respectfully request this Court dismiss this action because Plaintiff is improperly seeking review of a judgment entered against him in a New York State court, and is specifically attempting to re-litigate issues raised before that court regarding the validity of the underlying judgment. The *Rooker-Feldman* doctrine and the doctrines of *res judicata* and collateral estoppel all bar Plaintiff's improper attempt to have this Court review the state court judgment and the issues decided therein.  Plaintiff's motion to vacate the judgment– on the same exact grounds that Plaintiff asserts herein - was denied by the state court. Plaintiff's RICO claims are subject to dismissal because he failed to: (a) submit a RICO Statement in accordance with Local Rule 9.2; (b) plead the existence of an "association in fact" RICO enterprise; (c) establish a pattern of racketeering activity, as he has not pled (i) actionable predicate RICO acts of wire and mail fraud, (ii) predicate acts spanning a period longer than two years, or (iii) a threat of continuing

1

RICO acts.[1]   Finally, the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims or, alternatively, dismiss them.

## II. PLAINTIFF'S ALLEGATIONS

According to the complaint, Plaintiff filed a medical malpractice claim in United States District Court against doctors at a Veterans Administration hospital (Compl. ¶ 26).   Plaintiff was granted an award, appealed the award, and the award was increased or modified as a result of mathematical errors (Compl. ¶ 27).   See *Carroll v. U.S.* 295 Fed. App'x 382 (2d Cir., 10/2/2008). Funds received from a malpractice award are not exempt and Plaintiff does not claim any of the funds from his medical malpractice award are exempt.   However, Plaintiff claims that the funds deposited from his medical malpractice award "represented the exempt veterans benefits" and were a "setoff" against veterans' disability benefits, which he admits he was never awarded (Compl ¶¶ 30, 31).   This is contradicted by Plaintiff's malpractice award, proving that the funds were solely derived from the malpractice award. If the funds were exempt, Plaintiff could have filed an exemption claim pursuant to CPLR §5222-a.

Plaintiff claims Equities obtained a "fraudulent" judgment in the underlying case alleging: a) he was never served; b) the process server filed a false affidavit of service; c) he did not reside at the address set forth in the affidavit of service; d) the Court where the judgment was obtained had no jurisdiction; e) Equities sought damages in excess of the monetary limit; f) the statute of limitations expired on the date of the alleged service[2]; g) the affidavit of merit in support of the default judgment "falsely claimed personal knowledge that Plaintiff owed a debt to MBNA;" h) he was never served with

---

[1]As detailed below, the RICO claim asserted herein is "copycat" litigation seeking to "borrow" facts from a complaint filed in the U.S. District Court (SDNY) in a case entitled *Sykes v. Mel S. Harris & Associates,* Case No. 09-cv-8486 (DC), which Plaintiff refers to (Compl. ¶¶ 1, 21).   Attempting to capitalize on the *Sykes* case, Plaintiff contends that the defendants in this case, a debt buying company and its employees, the process server, and an attorney conspired to create a racketeering enterprise whose purpose was to purchase debt, commence lawsuits on the debt, condone or engage in "sewer service" practices and then attempt to collect on default judgments secured in the debt collection lawsuits.   The pleadings in the case at bar, do not however, support such a claim and clearly fail to set forth a plausible claim capable of surviving a motion to dismiss.

[2] The operative date is the date the summons and complaint were filed with the Court which was February 14, 2008 (Compl. Exh. 1, p. 9 ("First Paper Filed:  02-14-2008). Thus, the action was filed within 6 years of the date of default, as set forth in the complaint (03/28/2002) (Compl. Exh. 1, p. 3).

a "Dunning letter" or "other documents" and his first notice of this lawsuit was in June or July of 2017 (Compl. ¶ 29).

Plaintiff admits he moved to vacate the underlying judgment through an order to show cause with a temporary restraining order, but that it was denied by the state court which granted the judgment (Compl. ¶ 36, Exh. 2, pp. 2-7). The state court found:

> Please be advised that your application to vacate the default judgment is hereby denied.  In order to vacate a judgment by default, it must be shown that the failure to appear was excusable and that you have a meritorious defense.
> A mere allegation that you were not served in and of itself is insufficient to show that the default was excusable.  In addition, a motion to vacate a judgment must be brought within five (5) years of the filing of a judgment.
> Accordingly, your show cause application is hereby denied. If you have any questions about this matter, you should consult an attorney. (Compl. Exh. 2 p. 2)

In support of his motion to vacate the judgment, Plaintiff submitted a detailed affidavit to the state court, which contains virtually the same allegations he makes in this complaint, specifically that the underlying judgment was fraudulent (Compl ¶ 36, Exh. 2, pp. 5-7).  Therein, Plaintiff alleged his "good defense is that he was not properly served and the statute of limitations expired."  He fails to assert any defenses on the merits (Compl. Exh. 2, p. 5). He reiterates that he did not reside at the address listed in the affidavit of service at that time; that is was "probable that service of process was never even attempted," and mentions "sewer service." (Compl. Exh. 2, p. 6)  Plaintiff also claims that the court had no personal jurisdiction; that the statute of limitations had expired; and that his first knowledge of the action was when he received a letter from the Navy Federal Credit Union (presumably in July of 2017). He also alleges the funds were from a medical malpractice case and were exempt veterans' benefits (Compl. Exh. 2, p. 7). Of course, as Plaintiff admits, the Kingston City Court denied his motion to vacate the judgment, and Plaintiff did not appeal that decision.

Thus, the very same issues Plaintiff alleges in this complaint, including the issues of "sewer service," the court's lack of jurisdiction, the statute of limitations issue, his lack of knowledge of the underlying action prior to June or July of 2017, were squarely placed before the court in the state court

action and were rejected by that court.  Significantly, Plaintiff has never denied that he owed the underlying debt, and never disputed that the amount sued for was correct.

Plaintiff supports his claim of "sewer service" by attaching a complaint from the New York State Attorney General ("OAG") against Serves You Right and David Warshall, and a Consent Order, entered into between the same parties, both dated July 2010. (Compl. ¶¶ 38-39).

Plaintiff supports his RICO claim by making reference to *Snyder v. U.S. Equities Corp.* (Case No. 12-CV-06092 (CJS), W.D.N.Y.), and an "Assurance of Discontinuance" ("AOD") entered into between Strumpf and the OAG in *April of 2011*.  As Plaintiff admits, the OAG never made  the finding that Strumpf was aware that any affidavits of service were falsified (Compl. ¶ 40).  Thus, the AOD did not constitute a finding of any wrongdoing or liability on the part of Strumpf or an admission by Strumpf of any wrongdoing or liability.  Despite the fact that the AOD: (a) makes absolutely no finding regarding Strumpf's conduct or knowledge and (b) is precluded from use in civil litigation, Plaintiff now attempts to use this document as the factual predicate for his RICO claim.[3]

Plaintiff's RICO claim alleges that all the Defendants were an "association in fact" enterprise which schemed to secure default judgments through fraudulent means (Compl. ¶ 49). Plaintiff alleges three predicate acts of wire and mail fraud: Defendants' alleged use of the mails to deliver to the Kingston City Court (a) a fraudulent affidavit of service (b) a fraudulent affidavit of facts and (c) a fraudulent attorney's affirmation(s) [sic] (Compl,  ¶ 56). Plaintiff also claims that Defendants used the mail and wires involving alleged activities which are not even part of this litigation and thus cannot be considered as part of this litigation (Compl, ¶¶ 57, 60).

---

[3]      The AOD expressly states:  ". . . this Assurance, and the Exhibit hereto, (i) may not be used as evidence in any judicial or administrative hearing, proceeding or action except for a proceeding  by the OAG to enforce its terms; (ii) does not create duties or obligations to third persons not a party to this litigation, except as explicitly set forth herein; and (iii) creates no liability or responsibility from Strumpf or the plaintiffs to any third person party based on compliance with any term, condition or provision of this Assurance, other than as explicitly set forth herein; it being the expressed intent of the OAG and Strumpf that compliance with this Assurance shall not constitute a violation of 15 U.S.C. §1962 et seq, commonly referred to as the Fair Debt Collection Practices Act, 18 U.S.C. §1961 et seq., commonly referred to as the Racketeer Influenced and Corrupt Organization Act, or N.Y. General Business Law, Articles 22-A and 29-H." (AOD ¶48).
         It further states that: "This Assurance is not intended for use by any third party in any other proceeding and is not intended, and should not be construed, as an admission of liability by Strumpf."  (AOD ¶51).

## III.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for failure to state a claim upon which relief can be granted.  Dismissal is appropriate when all the facts alleged in the complaint are accepted as true and a plaintiff has not pleaded "facts to state a claim to relief that is plausible on its face …." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A motion setting forth a facial attack on the Court's subject-matter jurisdiction - as Defendants do in this motion - under Rule 12(b)(1) is reviewed using an identical standard.  *See Moore v. PaineWebber Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999).

Although a complaint need not include detailed factual allegations, it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. @ 555 (2007).    See also *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).  Fed. R. Civ. P. 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 555 n.3 (2007).  While the court should construe the factual allegations in the light most favorable to the Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  (citing *Twombly*, 550 U.S. at 555).  Rule 8 requires more than a "the defendant-unlawfully-harmed-me accusation." *Id. (citing Twombly, 550 U.S.* at 555).  While plausibility does not equal "probability," plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*.

On a motion to dismiss, the court should only accept reasonable inferences arising from the pleadings.  It need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266

5

F.3d 979, 988 (9th Cir. 2001).  See also *see also Gavish v. Revlon, Inc.*, 2004 WL 2210269 at * 10, 2004 U.S. Dist. Lexis 19771 (S.D.N.Y., 2004) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss" (internal citations and quotation marks omitted). If the complaint "tenders naked assertions devoid of further factual enhancement" it cannot survive a motion to dismiss. *Iqbal, supra,* 556 U.S. @ 678, 129 S.Ct. @ 1949.

For purposes of deciding a motion to dismiss, "[t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (internal citations and quotation marks omitted) Mangiafico *v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006). A court may rely on a document not incorporated by reference where the complaint "heavily relies upon its terms and effect, which renders the document integral to the complaint." *Id.*

"It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  Moreover, the Court may take judicial notice of the proceedings before the New York state court.  *See, e.g., Swiatkowski v. Citibank*, 446 Fed. Appx. 360, 361 (2d Cir. 2011) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

"A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks omitted).  *Ahlers v. Rabinowitz,* 684 F.3d 53, 60 (2d Cir. 2012) "However, when a plaintiff is proceeding *pro se,* all normal rules of pleading are not absolutely suspended. For example, an opportunity to amend should be denied where the problem with plaintiff's causes of action is substantive such that better pleading will not cure it." (internal quotation marks and footnotes omitted) *Jackson v. Onondaga Cty.,* 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008).  See also *Graves v. Goodnow Flow Ass'n, Inc.,* 2017 WL 4326073, at *6 (N.D.N.Y. Sept. 27, 2017), *aff'd,* No. 17-3457, 2018 WL 4037349 (2d Cir. Aug. 23, 2018), *Pflaum v. Town of Stuyvesant,* 937 F. Supp. 2d 289, 299 (N.D.N.Y. 2013).

6

## IV.    ARGUMENT

### A.  *ROOKER-FELDMAN BARS THE CLAIMS IN THIS ACTION*

Pursuant to the *Rooker-Feldman* doctrine, a federal district court lacks subject matter jurisdiction over claims that challenge state court judgments. *See Rooker v. Fidelity Trust Co*., 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), D.C. *Court of Appeals v. Feldman*, 460 U.S. 462, 486-87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).   The Supreme Court is the only federal court that has jurisdiction to review state court judgments, in accordance with 28 U.S.C. § 1257 (*Feldman*, 460 U.S. @ 476, 103 S. Ct 1303).   *Rooker-Feldman* bars federal district courts from exercising jurisdiction over claims that are "inextricably intertwined" with state court determinations. *Feldman*, 460 U.S. @ 482-83 n. 16, 103 S.Ct. 1303. *Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 281,125 S. Ct. 1517, 1520 (2005).

The Second Circuit set forth "four requirements for the application of *Rooker-Feldman"* to bar the Federal Court action: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." (internal quotation marks omitted). (*Hoblock v. Albany County of Board of Elections*, 422 F 3d 77, 85 (2d Cir., 2005) @ 85).

The *Rooker-Feldman* doctrine applies squarely to Plaintiff's claims. First, Plaintiff was the state court loser. A state court judgment was entered against Plaintiff and in favor of Equities, and the state court denied Plaintiff's motion to vacate the judgment.  Thus, the first prong has been met.

Second, Plaintiff is complaining of injuries caused by the state court judgment.  "Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit

from *Rooker–Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed. *Feldman* itself makes this plain." *Id. @* 86. "[F]ederal plaintiffs are not subject to the *Rooker-Feldman* doctrine unless they *complain of an injury* caused by a state judgment." (Emphasis in original). (*Id. @*87).

Plaintiff made the identical claims in this action as in his affidavit in support of his failed motion to vacate the judgment that he was never served with the summons and complaint (Comp. ¶ 29a; Exh. 2, p. 5, Aff. 3); that the process server filed a false affidavit of service and that he did not live at the address where he was served (Compl. ¶ 29b, 29c, Exh. 2, pp 5-6, ¶¶ 5-7); that the statute of limitations expired (Compl. ¶ 29f, Exh 2., p 6, ¶ 9); that his first notice of the debt was in June/July of 2017 (Compl. ¶ 33, Exh. 2, p. 6, ¶¶ 11-12); and that the funds executed upon were exempt (Compl. ¶ 36, Exh. 2, p 7, ¶¶ 13-14). Thus, Plaintiff's claims herein are identical to those made in his motion to vacate the judgment, which was denied by the Court.  "[B]ecause Plaintiff's current claims relating to Defendant's allegedly fraudulent practices in state court are inextricably intertwined with the state-court proceedings, the Court finds that these are barred by the Rooker-Feldman doctrine." *Forjone v. Federated Fin. Corp. of Am.*, 816 F. Supp. 2d 142, 148 (N.D.N.Y. 2011). "To the extent that Plaintiff is complaining that the state court's judgment caused the injury" the federal district court lacks jurisdiction pursuant to *Rooker–Feldman. Mac Pherson v. State St. Bank & Tr. Co.,* 452 F. Supp. 2d 133, 138 (E.D.N.Y. 2006), *aff'd,* 273 F. App'x 61 (2d Cir. 2008). Thus, the second prong of *Rooker-Feldman* has been met.

Third, Plaintiff invites review and rejection of the judgment because the relief he seeks may be granted only if the Court determines that the state court's judgment and subsequent decision denying his motion to vacate the judgment was erroneous or issues a decision that would call the validity of that order into question.  *Koziel v. City Court of Yonkers*, 351 Fed. App'x 470, 471 (2d Cir. 2009) (noting that "[i]nsofar as Appellant seeks to challenge the state procedures for appealing a decision as violating his due process rights, that claim is inextricably intertwined with the judgment of the state court" and

barred by the *Rooker-Feldman* doctrine). The third Rooker-Feldman requirement is met where "the arguments and relief requested before this Court are precisely the arguments raised by Plaintiff in his Order to Show Cause before the state trial court." *Mac Pherson v. State St. Bank & Tr. Co.,* 452 F. Supp. 2d 133, 138 (E.D.N.Y. 2006), *aff'd,* 273 F. App'x 61 (2d Cir. 2008).

The FDCPA requires the Court to evaluate whether Defendants engaged in any improper conduct, which would entail review of the state court judgment and its finding denying Plaintiff's motion to vacate the judgment. Thus, the third prong of the *Rooker-Feldman* analysis has been met.

Fourth, both the judgment and the court order denying Plaintiff's efforts to set aside the judgment were entered prior to Plaintiff's commencement of this action. Thus, all four prongs have been met.

There is no fraud exception to the *Rooker-Feldman* doctrine in this Circuit. See *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) ("To the extent Vossbrinck asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars Vossbrinck's claim."). See also *Brown v. Wells Fargo Bank, N.A.*, 605 F. App'x 58, 59 (2d Cir. 2015). "Courts in this District have consistently held that claims that a state court judgment was fraudulently procured are subject to *Rooker-Feldman*. Plaintiff's claim regarding this misrepresentation sounds in fraud, yet we have never recognized a blanket fraud exception to Rooker-*Feldman*." (internal quotation marks and parentheses omitted) *Gurdon v. Doral Bank*, 2016 WL 721019 at * 2, 2016 U.S. Dist. LEXIS 21674, at *18 (S.D.N.Y. Feb. 23, 2016).

The Second Circuit recently clarified its interpretation of the *Rooker-Feldman* doctrine in *Charles v. Levitt*, 716 Fed. App'x. 18, 21 (2d Cir. 2017). In reviewing the substantive requirement to trigger the doctrine's application, the court stated "we must scrutinize the injury of which a plaintiff complains as a necessary step toward determining whether the suit impermissibly seeks review and rejection of a state court judgment, or permissibly seeks some other remedy." (citations omitted). The

9

*Rooker-Feldman* doctrine is appropriate where the Plaintiff "complains of injuries caused by the state court judgment, such that granting the relief he seeks would require a federal court, impermissibly, to review and reject the state-court rulings," and the complaint "manifests a singular focus on allegedly wrongful actions" as a result of the state court judgment. *Id.* @ 22. See also *Chery v. Nationstar Mortg. LLC,* 2018 WL 3708664, at *3 (S.D.N.Y. Aug. 2, 2018).

By disputing the bank execution, Plaintiff is inherently challenging the entry of the default judgment.   *See Shieh v. Chase Bank USA, N.A.*, 2012 WL 2678932 @ * 5 (E.D.N.Y. 2012), where the defendant issued a wage garnishment after obtaining a default judgment.  Where plaintiff "is simply contesting the propriety of the default judgment rendered in state court, this Court is without jurisdiction to hear such a claim... This doctrine applies equally to challenges to state court default judgments... If [Plaintiff] wishes to challenge the validity of the default judgment, she must move to vacate it in the rendering state court." Plaintiff challenged the state court judgment making the same allegations he has made herein, his motion was denied, and the state court ratified the validity of the judgment.

*Rooker-Feldman* is not invalidated simply because the judgment was rendered by default. "Once entered, a default judgment is a valid judgment, even if the affidavit [of service] contained allegedly false information, unless a party successfully moves to vacate that judgment pursuant to N.Y. Civ. Prac. L. & R. 5015 or 317. *Rooker-Feldman* applies to default judgments just as it does to other types of judgments." *Ballyhighlands, Ltd. v. Bruns*, 182 F. 3d 898, 1999 WL 377098 at *2 (2d Cir., 1999).  See *Bailey v. Interbay Funding, LLC,* 2018 WL 1660553, at *8 (D. Conn. Apr. 4, 2018) and *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035 (8th Cir. 1999). (*Rooker-Feldman* applies to a default judgment proceeding).

Because Plaintiff's claims relate to injuries caused by the determination of the state court, or are at least "inextricably intertwined" with the determination, this Court could not grant the relief requested by Plaintiff without the risk of a ruling inconsistent with that of the state court. Rather than appealing

that decision, Plaintiff filed this federal lawsuit. Thus, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and should be dismissed.

## B.  RES JUDICATA APPLIES

In order to determine whether *res judicata*, or claim preclusion, applies, the Second Circuit follows the 'transactional analysis' approach adopted by the New York Court of Appeals, which: "operates to preclude the litigation of matters that could have or should have been raised in a prior proceeding arising from the same 'factual grouping,' 'transaction,' or 'series of transactions.'" (citations omitted) *Ferris v. Cuevas*, 118 F. 3d 122, 126 (2d Cir., 1997). See *Sackets Harbor Leasing Co., LLC v. Vill. of Sackets Harbor*, 485 F. App'x 497 (2d Cir. 2012). "A final decision in one action bars all subsequent claims arising out of the same transaction or series of transactions, even if based on different legal theories or seeking a different remedy." (citations and internal quotation marks omitted) *Chery v. Nationstar Mortg. LLC,* 2018 WL 3708664, at *4 (S.D.N.Y. Aug. 2, 2018).

The r*es judicata* standard is met when: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 284-85 (2d Cir. 2000). "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). The doctrine applies "not only to claims that were litigated, but also claims that could have been raised in the prior litigation." *Shelley v. Silvestre*, 66 A.D.3d 992, 993, 887 N.Y.S.2d 662 (2d Dep't 2009).

*Res judicata* applies to default judgments. "*Res judicata* does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim… That is why it has long been the law that default judgments can support *res judicata* as surely as judgments on the merits. [citation omitted]." *EDP*

*Medical Computer Systems, Inc. v. U.S.*, 480 F.3d 621, 626 (2d Cir. 2007). See also *Forjone v. Federated Financial Corp. of Amer.*, 816 F. Supp. 2d 142, 150 (N.D.N.Y, 2011) (holding res judicata barred FDCPA claims challenging facts essential to default judgment).

Herein, all the elements of *res judicata* are easily satisfied.  The Plaintiff in the state court action is identical to the Plaintiff in the matter presently before the Court. Plaintiff is seeking to re-litigate issues already decided in the state lawsuit, which was a final adjudication on the merits. Finally, Plaintiff's claims arise from the same facts at issue in the state lawsuit and could have been raised there.

Plaintiff bases his claims on the invalidity of the affidavit of service, affidavit of merit and attorney's affirmation in the state court action, and he challenges enforcement of the judgment. (Compl. ¶¶ 29, 46, 50-51). Plaintiff made these very same allegations in state court, and they were decided in Defendants' favor in state court. *Res judicata* bars Plaintiff from re-litigating these very same issues and any other issues which Plaintiff raised herein, since he could have raised them in the state court action.

## C.  COLLATERAL ESTOPPEL BARS PLAINTIFF'S CLAIMS

Plaintiff's claims alternatively are barred by collateral estoppel. Collateral estoppel, or issue preclusion, means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)).

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted). As detailed above, Plaintiff filed a motion to vacate the judgment in the state court action and raised issues as to whether the Defendants had perpetrated a fraud, submitted false affidavits and a false affirmation. The state court ruled on these issues when it denied Plaintiff's motion to vacate the judgment.

### D.  PLAINTIFF FAILS TO STATE A VIABLE FDCPA CLAIM

Plaintiff cites practically every section of the FDCPA in support of his claim that Defendants violated the Act. (Compl. ¶ 43-45). He alleges defendants made "false and misleading misrepresentations" and engaged in "unfair and unconscionable practices" by 1) enforcing judgments they knew or should have known were obtained by fraud; 2) making false representations to the court and the Sheriff that the judgment was legitimate 3) collecting judgments without providing actual notice of assignment and 4) collecting judgments without "meaningful attorney review." (Compl. ¶ 46).

First, although Plaintiff refers to "judgments," there is only one judgment which is the subject of this action, and the state court denied Plaintiff's motion to vacate that judgment, and rejected Plaintiff's claims of any alleged "fraud."  Second, the judgment was "legitimate" at all times.  Third, Plaintiff is apparently referring to CPLR §5019(c) which requires a person who acquires rights to a judgment to file a copy of the assignment of the judgment with the clerk of the court.  This is inapplicable since Equities is the original plaintiff in the state action. Fourth, Plaintiff fails to set forth a valid claim for "meaningful attorney review."

"The majority of district and appellate courts have routinely held that, the filing of a collection lawsuit without the immediate means of proving the debt does not violate the FDCPA." (citations and internal quotation marks omitted). *Hasbrouck v. Arrow Fin. Servs. LLC*, 2011 WL 1899250 at *5, 2000 U.S. Dist. Lexis 53928 (N.D.N.Y., 2011). The Court in *Hasbrouck* dismissed Plaintiff's FDCPA claims based upon defendant's commencement of a state court action even though defendant failed to attach "sufficient documentation" or "proof of debt" to the state court action.  See *Deere v. Javitch*, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006) ("filing a lawsuit supported by the client's affidavit attesting to the existence and amount of a debt, is not a false representation about the character or legal status of a debt, nor is it unfair or unconscionable.")

13

## 1.   Plaintiff Fails to Support His "Meaningful Attorney Involvement" Claim

The "meaningful attorney involvement" rule developed in cases where the debtor received a letter on law firm letterhead and signed by an attorney, despite the attorney's failure to review the matter. See the leading case of *Common v. Jackson*, 988 Ph.D. 1314, 1320 (2d Cir. 1993). That Court held that such a letter would tend to give the debtor the false impression that the letters were communications from an attorney, when in fact they were not 'from' the attorney in any meaningful sense of the word. See *Miller v. Wolof & Abramson, LLP*, 321 F.3d 292, 301 (2d Cir. 2003) (explaining that "a]lthough there is no dispute that [the defendant law firms] are law firms, or that the letters sent by those firms were 'from' attorneys in the literal sense of that word, some degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FDCPA"). "Meaningful attorney involvement" has never been applied where there is a valid judgment, as in the case at bar.

### E.   PLAINTIFF'S RICO CLAIM SHOULD BE DISMISSED BASED UPON PLAINTIFF'S FAILURE TO INCLUDE A RICO STATEMENT

Plaintiff's failure to include a RICO Case Statement, in accordance with this Court's local rules, requires immediate dismissal of these claims. This Court's Local Rules expressly require a Plaintiff asserting a RICO claim to include a RICO Case Statement (Local Rule 9.2)[5].

Fed. R. Civ. Proc. Rule 41(b) authorizes a district court to dismiss an action if "the plaintiff fails to prosecute or to comply with ... a court order." All litigants, including those proceeding *pro se,* "have an obligation to comply with court orders, and failure to comply may result in sanctions, including dismissal." *Agiwal v. Mid Island Mortgage Corp.,* 555 F.3d 298, 302 (2d Cir.2009) (citations and

---

[5] In any action in which a party asserts a claim under the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., the party asserting such a claim shall file a RICO statement within thirty (30) days of the filing of the pleading containing such a claim."

internal quotation marks omitted).  Failure to file a RICO case statement may warrant dismissal of RICO

claims. *See Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 259 (W.D.N.Y. 2010).

## F. PLAINTIFF'S RICO CLAIM SHOULD BE
## DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION

In order to establish a substantive civil RICO cause of action, a plaintiff must demonstrate that

the defendant participated in: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity.  *Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 120 (2d Cir. 2013)  "[RICO] Section 1964(c)

authorizes a private suit by '[a]ny person injured in his business or property by reason of a violation of

§1962.'" *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 495 (1985) (quoting 18 U.S.C.

§1964(c)).[6] To state a civil claim for damages under RICO, a plaintiff must show "(1) that the defendant

(2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity'

(5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7)

the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5,

17 (2d Cir. 1983).

The RICO statute provides that a "pattern of racketeering activity" consists of at least two related

predicate acts of racketeering activity, committed within a 10-year period (18 U.S.C. §1961(5)), and

which amount to, or pose a threat of, continued criminal activity. *Cofacredit, S.A. v. Windsor Plumbing*

*Supply Co.,* 187 F.3d 229, 242 (2d Cir. 1999), citing *See H.J., Inc. v. Northwestern Bell Tel. Co.,* 492

U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).  See also *First Capital Asset Management, Inc.*

*v. Satinwood, Inc.*, 385 F. 3d 159, 178 (2d Cir. 2004). When a RICO claim arises from the predicate acts

of mail fraud and wire fraud, it must be pled with the particularity required under Fed. R. Civ. P. 9(b).

*Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 261 (W.D.N.Y. 2010). See also Lesavoy*, v.*

---

[6] Section 1962 "renders criminally and civilly liable 'any person' who uses or invests income derived 'from a pattern of racketeering activity' to acquire an interest in or to operate an enterprise engaged in interstate commerce, §1962(a); who acquires or maintains an interest in or control of such an enterprise 'through a pattern of racketeering activity,' §1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity,'" §1962(c); or, finally, who conspires to violate the first three subsections of § 1962, § 1962(d)." *H.J. Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 232-33 (1989).

*Gattullo-Wilson, et al.*, 170 Fed. Appx. 721, 723 (2d Cir. 2006). ("All allegations of fraudulent predicate acts [under RICO] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).") (citations omitted). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

### 1.    Plaintiff Has Failed to Plead the Existence of A RICO Enterprise

A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" whose existence is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).  Further, "to demonstrate an 'association-in-fact' enterprise . . . a plaintiff must allege facts showing the existence of a 'group of persons associated together for a common purpose of engaging in a course of conduct.'" *Smartix Int'l Corp. v. MasterCard Int'l LLC*, 355 F. App'x 464 (2d Cir. 2009)  (citing *Turkette*, 452 U.S. at 583; *First Capital Asset Mgmt., Inc. v. Satinwood*, 385 F.3d 159, 173 (2d Cir. 2004)).  Finally, there must also be a "'nexus . . . between the enterprise and the racketeering activity that is being conducted.'" *Id.* Plaintiff herein has wholly failed to allege a "RICO enterprise."

Plaintiff has failed to allege that Defendants "used or invested racketeering income to acquire or maintain an interest in the alleged enterprise" *Mehrkar v. Schulmann*, 2001 WL 79901, *5 (S.D.N.Y. Jan. 30, 2001)), citing *Ouaknine v. MacFarlane*, 8 F.2d 75, 82 (2d Cir. 1990). To establish an "association in fact" among enterprise members, the Plaintiff must plead specific allegations of the enterprise's continuity of structure. See *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F.Supp. 89, 98 (2d Cir. 1993), *aff'd*, *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) (dismissing the RICO claim because plaintiff "has not specified how all defendants . . . joined together as a group to perpetuate the frauds alleged. . . ."); *see also, Moll* v. *U.S. Life Title Ins. Co.*, 654 F. Supp. 1012, 1032 (S.D.N.Y. 1987) (dismissing the complaint for failure to specify how the alleged enterprise

members joined together to achieve real estate kickbacks, and for failure to plead factual allegations in support of the continuity of structure or personnel in the purported enterprise).

Plaintiff's complaint claims that Strumpf's alleged retaining of David Warshall to handle service is sufficient evidence of an association in fact.  Other than Plaintiff's conclusory allegations, there is no evidence that Defendants intended to participate in a scheme together or that Defendants shared a common purpose to defraud him. Plaintiff's attempt to create a scheme by relying on evidence concerning transactions that were not at issue in the Plaintiff's case and the AOD (which on its face states that it is not a finding of fact regarding Strumpf and makes no mention of U.S. Equities) is similar to a tactic rejected in *Smallwood v. Lupoli*, 2007 WL 2713841, * 6; 2007 U.S. Dist. LEXIS 68325, *15-18 (E.D.N.Y. Sept. 14, 2007).  In that case, the Plaintiff attempted to use a grand jury report involving different individuals and transactions not at issue in the case to create the association in fact.  As the *Smallwood* Court correctly noted, such evidence had no bearing on the case. Likewise, the Plaintiff fails to establish any intent on the part of Equities and Strumpf to participate in a common scheme with the process server.  Plaintiff's conclusory assertions that Equities and Strumpf schemed with Warshall to produce false affidavits of service is wholly insufficient to sustain a RICO claim. Moreover, Plaintiff's allegation that he was "never served" was rejected by the state court; the state court judgment was never vacated; was never found to be "fraudulent;" and the same exact claims Plaintiff makes herein were rejected by the court which issued the judgment.

2.   **Plaintiff Has Failed to Plead a Pattern of Racketeering Activity**

In order to demonstrate a pattern of racketeering activity under Section 1962, a plaintiff must establish that the conduct in question amounts to, or constitutes a threat of, continuing racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989). Continuity may be closed- or open-ended, with closed-ended referring to a pattern of criminal activity extending over a substantial period of time and open-ended referring to past criminal conduct

17

that projects into the future with a threat of repetition. *See H.J. Inc.*, 492 U.S. at 241-42.; *see also GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995).

     **a.**    **Plaintiff Has Failed to Plead the Continuity Element of a RICO Claim**

        **1.**    **Plaintiff Did Not Plead Closed-Ended Continuity**

Closed-ended continuity is established by "a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. Courts have pointed repeatedly to duration as the most important factor in determining whether a closed-ended RICO pattern exists. *See First Capital Asset Management, Inc. v. Brickellbush, Inc.*, 219 F.Supp.2d 576, 585 (S.D.N.Y. 2002).   In considering whether the continuity requirement is satisfied, the Second Circuit has consistently held that a period of less than two years is not a "substantial period of time" in order to make out a closed-ended pattern., *Spool v. World Child International Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (predicate acts spanning a period of no more than sixteen months were of insufficient length to demonstrate closed-ended continuity).

"To satisfy closed-ended continuity, the Plaintiff must prove a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months ... do not satisfy this requirement. Since the Supreme Court decided *H.J., Inc.,* this Court has never held a period of less than two years to constitute a substantial period of time." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir. 1999) (citations and internal quotation marks omitted).

"The Second Circuit has repeatedly emphasized that closed-ended continuity is primarily a temporal concept, and has never held a period of less than two years to constitute a 'substantial period of time.' The relevant period in evaluating continuity is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." (citations and internal quotation marks omitted). *Stanley v. OptumInsight, Inc.,* 2014 WL

906145, at *7 (N.D.N.Y. 2014). See also *Abramo v. Teal, Becker & Chiaramonte, CPA's, P.C.,* 713 F. Supp. 2d 96 (N.D.N.Y. 2010)

"Courts have held that *any* period shorter than two years is too short to establish a close-ended pattern of racketeering activity." *Spiteri v. Russo*, 2013 WL 4806960, at *52 (E.D.N.Y. 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015).

Moreover, the Second Circuit has held that acts that occur over periods longer than two years do not automatically constitute closed-ended continuity. *See, e.g., First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) ("[W]hile two years may be the minimum duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern.").

In the case at bar, Plaintiff claims the following predicate acts of mail and wire fraud:

1) On or about June 16, 2008, defendants filed a fraudulent affidavit with the Kingston City Court Clerk which falsely stated that the process server properly served Plaintiff with process in the Debt Collection Lawsuit
2) On or about January 6, 2009, defendants filed a fraudulent affidavit of Merit with the Kingston City Court Clerk from defendant Lam
3) On or about January 14, 2009, defendants filed a fraudulent attorney's affirmation with the Kingston City Court clerk from defendant Strumpf.  (Compl. ¶ 55).

Thus, the three predicate acts alleged herein are all within a period of seven months, from June of 2008 through January of 2009.  Plaintiff fails to allege any other predicate acts and cannot rely on alleged predicate acts concerning individuals other than the Plaintiff himself to support his RICO claim. (Compl. ¶¶ 54, 57 – 61). Moreover, the second and third alleged "predicate acts" are the same act – defendants used the mail to deliver a proposed default judgment in the state court action to the Court. The affidavit of facts was mailed to the Court with the attorney's affirmation in support of the judgment as well as the proposed judgment (Compl., Exh. 1, pp 4-7, 11-12).  Strumpf Decl., Exh. A).

Even assuming that acts 2 and 3 were mailed separately, all three acts occurred no more than seven (7) months apart - clearly insufficient to sustain a RICO claim, as reiterated in numerous cases in this Circuit, set forth *supra*. Thus, there is no closed-ended continuity and no viable RICO claim.

### 2. Plaintiff Cannot Establish Open-Ended Continuity

To satisfy open-ended continuity a plaintiff is not required to demonstrate that the predicate acts extended over a substantial period of time, but must show that there was "a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 242 (2d Cir. 1999). Plaintiff acknowledges that defendant Warshall has been out of the process serving business since July of 2010. (Compl. ¶¶ 38-39). As the process server Defendant is no longer in business, there is no "threat of continuing activity beyond the period during which the predicate acts were performed." *See e.g. Serin v. Northern Leasing Sys.*, 2009 WL 7823216 (S.D.N.Y., 2009).

The Second Circuit has held that where the scheme is inherently terminable, open-ended continuity does not exist. See *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995). Mere conclusory assertions that the alleged business practices at issue will continue into the future are insufficient to sustain open-ended continuity. *See Purchase Real Estate Group, Inc. v. Jones*, 2010 WL 1837809 2010 U.S. Dist. LEXIS 43201, *26 (S.D.N.Y. Apr. 30, 2010). As discussed above, the alleged last predicate act occurred 9 ½ years prior to the commencement of this lawsuit and Plaintiff has attached documentation to his own complaint which confirms there is no threat of the alleged acts continuing in the future, because Warshall has ceased any involvement in process serving (Compl. ¶11, Exh. 3, p. 26). Thus, there is no open-ended continuity.

Thus, the purported predicate acts alleged by Plaintiff fail to establish closed-ended or open-ended continuity and fail to plead mail or wire fraud sufficient to sustain a RICO claim.

**b. Plaintiff Cannot Rely on Routine Court Filings as Predicate Acts**

Litigation activities cannot properly form the basis for RICO predicate acts. *See, e.g., Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171-172 (E.D.N.Y. 2010) (collecting cases holding that litigation activities cannot form the predicate acts for a RICO claim); *Gunn v. Palmieri*, 1989 WL 119519, at *1 (E.D.N.Y. Sept. 29, 1989), *aff'd*, 904 F.2d 33 (2d Cir. 1990), *cert. denied*, 498 U.S. 1049 (1991) (rejecting "untenable" interpretation of RICO which would permit litigation activities to be construed as RICO predicate acts); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000) (finding allegations "at best amount to vague abuse of process or malicious prosecution claims" where complaint lists "variety of 'predicate acts,' all of which involve the filing of complaints and other legal documents"); *Nakahara v. Bal*, 1998 WL 35123 * 6, 1998 U.S. Dist. LEXIS 825, *31-32 (S.D.N.Y. Jan. 30, 1998); *DirecTV, Inc. v. Lewis*, 2005 WL 1006030 at * 7, 2005 U.S. Dist. LEXIS 8187, at *22-23 (W.D.N.Y. Apr. 29, 2005) ("courts have held that serving litigation documents by mail cannot be a predicate act to establish mail fraud under the RICO statute"). As one District Court has noted, allowing acts like the ones alleged here to suffice as RICO predicate acts "would lead to absurd results." *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.,* 758 F. Supp. 2d 153, 172-175 (E.D.N.Y. 2010); *see also Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 392 (S.D.N.Y. 2000) ("Garden-variety pleading errors and the filing of routine motions do not constitute RICO predicate acts.").

Mail or wire fraud allegations are "insufficient to plead the necessary predicate act where the focus of those allegations is the defendant's litigation activities in pending litigation." *Saluzzo v. Greenbaum,* WL 13234286, at *3 (N.D.N.Y. Feb. 4, 2011).  "To hold otherwise would lead to the absurd result of turning every state court lawsuit into a predicate for a subsequent federal RICO action." (citations and internal quotation marks omitted). *Id*. at *3.

Plaintiff references *Snyder v. U.S. Equities Corp.,* 2014 WL 317189, at *6, U.S. Dist. LEXIS 10348, (W.D.N.Y. Jan. 28, 2014), in his complaint, which was also an action commenced against Defendants Strumpf and Equities alleging violations of the FDCPA and RICO.[7] The RICO claims alleged in that lawsuit are virtually identical to the RICO claims herein: that the Defendants violated RICO by participating in an enterprise with the process server "to secure default judgment through fraudulent means and to use those judgments to extract money from Plaintiffs." *Snyder v. U.S. Equities Corp.,* Doc. #1 at ¶ 130). See Compl. ¶20 herein, which contains the identical allegation.

The *Snyder* District Court dismissed the entire action on a motion to dismiss, citing numerous decisions "in this Circuit and in other Circuits, which hold, in the context of Civil RICO claims based on fraudulent litigation, that a defendant's use of mail and wire to conduct allegedly fraudulent 'litigation activities' is insufficient to establish predicate acts of racketeering." *Id.* at *7.

The *Snyder* Court concluded that the "the gravamen of the allegations" was "that the defendants pursued fraudulent litigation, using fraudulent affidavits and filings, in an attempt to obtain money or property to which they were not entitled."  It then concluded that "the reasons articulated by other courts, as to why litigation activities should not be actionable under the Civil RICO statute, are equally applicable here." *Id.* at *8.

The *Snyder* Court also distinguished *Sykes v. Mel Harris and Associates, LLC,* 757 F.Supp.2d 413 (S.D.N.Y.2010), finding that "there is no indication, however, that the particular issue being discussed here was raised in *Sykes.* In that regard, the *Sykes* decision contains no discussion as to whether the defendants' fraudulent litigation activities qualified as predicate acts under RICO." *Id.* at *9.

"A defendant's use of mail and wire to conduct allegedly fraudulent 'litigation activities' is insufficient to establish predicate acts of racketeering." *Avraham v. Lakeshore Yacht & Country Club, Inc.,* 2016 WL 6585589, at *12 (N.D.N.Y. Nov. 7, 2016*), appeal withdrawn,* No. 16-4126, 2017 WL

---

[7] Plaintiff's complaint herein is also a "copycat" of the *Snyder* litigation.

6351878 (2d Cir. Jan. 31, 2017) (citing *Snyder*).  See also *Estate of Izzo v. Vanguard Funding, LLC,*
2017 WL 1194464, at *11 (E.D.N.Y. Mar. 30, 2017).

Plaintiff's alleged predicate acts constitute nothing more than the requisite mailings of an
affidavit of service, and an affidavit and affirmation in support of a routine motion for a default
judgment in a state court action and are therefore insufficient to sustain a RICO claim.

### G.  PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED

If the Court dismisses the federal claims, it need not exercise supplemental jurisdiction over the
state law claims. *See e.g. Kolari v. New York-Presbyterian Hosp.*, 455 F. 3d 118, 122 (2d Cir. 2006).
The Court generally should decline to exercise jurisdiction over the pendent state claim after having
dismissed plaintiffs' federal claims. See *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.
Ct. 1130, 16 L. Ed. 2d 218 (1966); *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 160
(E.D.N.Y. 2007).

### In the Alternative, the State Law Claims Should Be Dismissed on the Merits

Plaintiff alleges three state law claims against the Defendants: (1) violation of New York General
Business law ("GBL") §349; (2) violation of New York Judiciary Law § 487; and (3) malicious
prosecution.  To the extent that the Court does exercise jurisdiction over these state law claims, they
should be dismissed.

To bring a claim under GBL §349, a plaintiff must allege facts that demonstrate: (1) the act or
practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the
plaintiff was injured a result. See *Spagnola v. The Chubb Corp., et al.*, 574 F.3d 64, 74 (2d Cir. 2009).
Plaintiff has failed to plead that Defendants, in the debt collection business, were engaged in a
"consumer-oriented" act or affirmatively sought transactions with consumers. See *e.g. Hayrioglu v.
Granite Capital Funding, LLC*, 794 F. Supp. 2d 405, 410 (E.D.N.Y. 2011).  See also *Spirit Locker, Inc.
v. EVO Direct, LLC*, 696 F. Supp.2d 296, 300-02 (E.D.N.Y. 2010) (dismissing GBL §349 claim

because, *inter alia*, the complaint failed to allege consumer-oriented conduct by the defendant). "A claimant relying on §349 must establish that the alleged deceptive act or practice was directed to the consuming public at large." *Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano,* 331 F. Supp.2d 247 (S.D.N.Y. 2004).

"[I]n order to satisfy General Business Law § 349 plaintiffs' claims must be predicated on a deceptive act or practice that is consumer oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 24-25, 623 N.Y.S.2d 529 (1995); *accord Flax v. Lincoln Nat'l Life Ins. Co.,* 54 A.D.3d 992, 994, 864 N.Y.S.2d 559 (2d Dep't 2008). G.B.L. § 349 is "directed at wrongs against the consuming public," (*Oswego*, 85 N.Y.2d at 24-25), and "was designed to protect 'the little guy' from false advertising, pyramid schemes, bait-and-switch sales tactics, and other mischievous machinations by swindlers and scallywags." *Feinberg v. Federated Dep't Stores, Inc.,* 15 Misc.3d 299, 307, 832 N.Y.S.2d 760 (Sup. Ct. N.Y. Co. 2007).

Conduct by a party in the course of litigation (or any other legal proceeding) as a matter of law is not consumer-oriented activity within the scope of GBL §349. *See DirecTV, Inc. v. Rowland,* 2005 WL 189722 (W.D.N.Y. Jan. 22, 2005) (holding that defendants' alleged mailing of letters threatening litigations fell outside the scope of §349 because such conduct was not consumer-oriented). Litigating a collection suit is "almost certainly not consumer-oriented … [and] not likely to have a 'broader impact on consumers at large.'" *See Lane v. Fine, Such and Crane, LLP*, 767 F. Supp. 2d 382 (E.D.N.Y. 2011) (dismissing FDCPA and G.B.L. § 349 claims alleging false filings in a collection suit). Because Plaintiff fails to plead facts sufficient to show Defendants engaged in wrongs "against the consuming public," the §349 claim should be dismissed.

To establish a claim under New York Judiciary Law §487(1), a plaintiff must show that an attorney "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." To allege a cognizable claim under Judiciary Law §487, there must be

24

"a chronic and extreme pattern of legal delinquency." *Solow Mgmt. Corp. v Seltzer*, 18 A.D.3d 399, 400 (1st Dep't 2005).  Plaintiff has failed to allege a chronic and extreme pattern of deceit and wrongdoing to sustain such a claim. *Strumwasser v. Zeiderman*, 102 A.D.3d 630, 958 N.Y.S.2d 395 (1st Dept., 2013).

Finally, "[i]n order to prevail in an action for malicious prosecution in New York, a Plaintiff must show: (1) the initiation of an action by the defendant against [him], (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the Plaintiff."  (internal quotation marks and citations omitted).  *Engel v. CBS, Inc.*, 145 F.3d 499, 502 (2d Cir. 1998) The state court action terminated in favor of Equities; thus there can be no malicious prosecution claim.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the court enter an order, dismissing Plaintiff's complaint in its entirety and with prejudice, and granting such other and further relief which the court deems necessary and proper.

Dated: November 16, 2018

Respectfully Submitted,

*/s/Linda Strumpf*
Linda Strumpf, Esq., 519528
Defendant Pro se and Attorney for Defendants
U.S. Equities Corp. and Hal Siegel
69 Fox Run
South Salem, NY 10590
Tel: 212-566-6800
linda.strumpflaw@live.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------
 ROBERT CARROLL

                       Plaintiff,         Docket No.  1:18-CV-667 (TJM/CFH)

    -against-                    CERTIFICATE OF SERVICE

US. EQUITIES CORP., LINDA STRUMPF,
HAL SIEGEL, both personally and as owner
of U.S. Equities, DAVID WARSHALL,
and WING LAM
                      Defendants
----------------------------------------------------------

      I hereby certify that on November 16, 2018 I served the attached Memorandum of Law to the Plaintiff Pro Se by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service, addressed as follows:

Robert Carroll
P.O. 201
Connelly, NY 12417

                                */s/Linda Strumpf*
                                Linda Strumpf, Esq., 519528
                                Attorney for Defendant
                                U.S. Equities Corp.
                                69 Fox Run
                                South Salem, NY 10590
                                Tel: 212-566-6800
                                linda.strumpflaw@live.com