**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT CARROLL,**

                                        **Plaintiff,**                    **1:18-CV-667**
                                                                          **(TJM/CFH)**

        **v.**

**U.S. EQUITIES CORP., LINDA STRUMPF,**
**HAL SIEGEL, DAVID WARSHALL, WING**
**LAM,**
                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

## I.   INTRODUCTION

        Plaintiff Robert Carroll ("Plaintiff") commenced this action *pro se* asserting claims

under the Fair Debt Collection Practices Act ("FDCPA"), the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), New York General Business Law § 349 ("GBL § 349"),

and New York Judiciary Law § 487.  The action also asserts a New York state common-law

claim for malicious prosecution.  Defendants U.S. Equities Corp. ("U.S. Equities"), Linda

Strumpf ("Strumpf"), and Hal Siegal ("Siegal")(collectively "Defendants") move pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the claims against them.

Plaintiff opposes the motion.  For the reasons that follow, the motion is granted in part and

denied in part.

## II.   BACKGROUND

1

Unless otherwise noted, the following facts are taken from the Complaint, documents attached to the Complaint as exhibits, documents incorporated by reference in the Complaint, and documents in the underlying state-court litigation.  Generally, Plaintiff maintains that Defendants, based upon false affidavits of service and merit, obtained a default judgment against him in Kingston City Court for a consumer debt and then, unbeknownst to him, served an information subpoena and restraining notice on a bank where he had deposited over $50,000, thereby seizing money in that account.  Plaintiff's efforts to stop execution of the retraining notice and to vacate the default judgment were unsuccessful.

Plaintiff contends that the default judgment against him was acquired using a scheme similar to that used in another case.  *See* Compl. ¶¶ 1-2, 21.[1]  In this regard, Plaintiff

---

[1]Plaintiff alleges:

1. Plaintiff is a consumer who is suffering from the same type of collections of default judgments challenged as fraudulent in *Sykes, et al. v. Mel S. Harris and Associates, LLC, et al.*, 09 Civ. 8486 (S.D.N.Y.).  *Sykes* ended in a class action settlement where, for a vast majority of class members, the *Sykes* defendants stopped collecting on their judgments and a New York state court later vacated the outstanding judgments.

2. The defendants in this action engaged in a similar scheme to obtain default judgments against people by filing false affidavits of merit and service in state court and then using those fraudulently obtained judgments to extract money from them. The defendants submitted affidavits of merit, purportedly based on personal knowledge, purporting to certify that the action has merit, without actually having reviewed any credit agreements, promissory notes, or underlying documents, and, indeed, without even reading what was being signed.

* * *

21. This widespread practice by defendants of filing automatically-generated, form affidavits of merit based on 'personal knowledge' and, in many instances, affidavits of service, to obtain default judgments against debtors in state court is similar to the Sykes litigation. With respect to the affidavits of merit, it is alleged that WING LAM signed affidavits, purportedly based on personal knowledge, purporting to certify that the action has merit, without actually having reviewed any credit agreements, promissory notes, or underlying documents, and, indeed, without even reading what he was signing." [*sic*] *Sykes*, 285 F.R.D. at 285.

(continued...)

alleges that Strumpf, an attorney, represented U.S. Equities, a debt collection agency

owned by Strumpf's husband, Siegal, in thousands of debt collection lawsuits.  Plaintiff

maintains that U.S. Equities purchased "for pennies on the dollar" debt portfolios consisting

of spreadsheets containing the names, addresses, and social security numbers of people

who allegedly owed money on defaulted consumer debts.  According to Plaintiff, these debt

portfolios did not include the original credit agreements, nor did they include account

statements or any other documentation that could be used to verify the accuracy of the data

in the spreadsheets.  Plaintiff also contends that the contracts of sale that accompanied the

debt portfolios specifically disclaimed the accuracy of the spreadsheets.  Plaintiff maintains

that U.S. Equities collected debts by filing lawsuits against the people named in the

spreadsheets and obtaining judgments against them.  In the lawsuits, Strumpf was the

attorney and U.S. Equities was the plaintiff that collected on the judgments by freezing

people's bank accounts, seizing their money and wages, and intimidating people into

making voluntary payment agreements.  Plaintiff asserts that because U.S. Equities did not

and could not obtain proof that any particular person actually owed a debt, they could not

win judgments in contested cases.  Therefore, he contends, they concocted a scheme that

allowed them to win uncontested default judgments.  Pursuant to this scheme, defendants

submitted to the courts false affidavits of service and false affidavits of merit.  In support of

his contention that this scheme existed, Plaintiff points to a lawsuit commenced in July 2010

by then-New York State Attorney General Andrew M. Cuomo against Serves You Right, Inc.

---

[1](...continued)
Compl., ¶¶ 1-2, 21.

3

("SYR") and David Warshall ("Warshall").[2]  This lawsuit was the result of an investigation into the fraudulent activities of the process-serving firm SYR during the period of January 1, 2007 to September 30, 2009.  The lawsuit resulted in a July 21, 2010 Consent Order and Judgment that permanently enjoined SYR and Warshall from having any interest in any business involved in the service of legal process, required SYR to permanently cease any and all business activities and dissolve, required Warshall to surrender any license he had obtained as a process server from the New York City Department of Consumer Affairs, and required Warshall to pay a fine of $50,000.  Because Strumpf had used SYR's services during the period covered by the lawsuit, she entered into an "Assurance of Discontinuance" ("AOD") agreement with the New York State Attorney General.  The AOD indicated that on a "persistent and repeated basis" during the relevant period, SYR had prepared false affidavits of service, and that Strumpf had used SYR's services on approximately 4,020 occasions, and had obtained default judgments based on those false affidavits. The AOD did not indicate, however, that Strumpf was aware that SYR's affidavits were false. Nevertheless, in light of the fact that judgments had been obtained using false affidavits, Strumpf agreed to cooperate in identifying defendants in those cases, to give them an opportunity to have the judgments vacated.

As to Plaintiff's specific situation, he contends that on February 2, 2009, U.S. Equities obtained a "fraudulent" default judgment against him in the Kingston City Court in the amount of $28,681.97 which was a result of the $11,424.67 underlying debt plus interest at 21.99% per annum from March 28, 2002 through January 14, 2009.  Compl. Ex.

---

[2]The Court presumes this is the same David Warshall who is a defendant in this case.

1, p. 9.  Plaintiff maintains that this judgment was fraudulent because: he was never served with a summons and complaint; Defendant Warshall, who worked for SYR at the time, submitted a false affidavit of service; that at the time the action was commenced, Plaintiff did not live within the City of Kingston and therefore the Kingston City Court did not have personal jurisdiction over him; the judgment sought damages in excess of the statutory limit for money damages in the Kingston City Court; the date of the alleged service of the summons and complaint was more than six years after the date the cause of action accrued and thus was beyond the applicable statute of limitations; Defendant Lam submitted an affidavit of merit falsely claiming that he had personal knowledge that Plaintiff owed the debt that was the subject of the lawsuit; and that Plaintiff never received a letter from the creditor, Strumpf, or U.S. Equities notifying him of that his debt was overdue (a "dunning" letter).

Plaintiff contends that he did not learn of the lawsuit or the default judgment until June or July 2017 when he noticed that the balance in his bank account had suddenly decreased.  He called his bank and was told that it had been served with an information subpoena and retraining notice effectively freezing his account.  He contends that the bank never mailed a copy of the information subpoena to him but, after repeated requests, it emailed a copy to him more than a month later.  He asserts that "soon thereafter," his bank "issued a check and sent it to the Nassau County Sheriff's Department." Plaintiff contacted the Nassau County Sheriff's Department civil division and was told that the Sheriff's Department would not release the funds to U.S. Equities "pending an order to show cause." Plaintiff then submitted an application to the Kingston City Court seeking an order requiring U.S. Equities to show cause why the default judgment should not be vacated, and for a temporary restraining order staying the execution of the judgment pending a hearing to

determine whether plaintiff had been properly served with a summons and complaint (a "traverse" hearing) and whether his bank account contained exempt veterans benefits.  In support of that application, Plaintiff submitted an affidavit in which he attested that he was never served with a summons and complaint and did not learn of the action until he received a letter informing him that an information subpoena and restraining notice had been served on his bank; that he had a good defense to the action because the service of process was not proper, because the court did not have personal jurisdiction over him, and because the statue limitations had already expired at the time the action was commenced; that he did not live at the location where the summons and complaint was allegedly served; that he believed the representations made by the process server in attempting to effectuate service were false; that at the time the action was commenced he was living in another town and therefore the Kingston City Court never had personal jurisdiction over him; and that the funds upon which the restraining notice were executed were exempt from creditor judgment collections under the New York Debtor and Creditor Law.  Compl., Ex. 2, pp. 5-7.

On August 14, 2017, the Deputy Chief Clerk of the Kingston City Court sent Plaintiff a letter stating:

> Please be advised that your application to vacate the default judgment is hereby denied. In order to vacate a judgment by default, it must be shown that the failure to appear was excusable and that you have a meritorious defense.
>
> A mere allegation that you were not served in and of itself is insufficient to show that the default was excusable.  In addition, a motion to vacate a judgment must be brought within five (5) years of the filing of the judgment.
>
> Accordingly your show cause application is hereby denied. If you have any questions about this matter, you should consult an attorney.

*Id.*, p. 2.

6

This action followed.  As indicated above, Plaintiff asserts FDCPA, RICO, GBL §
349, and New York Judiciary Law § 487 claims, and a New York state common-law claim of
malicious prosecution.  He seeks a judgment "declaring that defendants have committed the
violations of law alleged in this action;" actual and/or compensatory damages; treble
damages pursuant to RICO and N.Y. Jud. Law § 487; punitive damages; statutory damages
pursuant to the FDCPA; and an order awarding costs, disbursements and attorney fees
pursuant to FDCPA, RICO and N.Y. GBL § 349.

## III.   STANDARDS OF REVIEW

### a.  12(b)(1)

A motion brought pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject matter
of the Court to address a case or certain claims in the case.  A case is to be dismissed for
lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) "when the district court
lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201
F. 3d 110, 113 (2d Cir. 2000).  A district court may refer to evidence outside the pleadings in
resolving a motion to dismiss for lack of subject matter jurisdiction. *Id.*  "A plaintiff asserting
subject matter jurisdiction has the burden of proving by a preponderance of the evidence
that it exists." *Id.*

### b.  12(b)(6)

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency
of the claims alleged in the matter.  On such a motion, the Court must accept "all factual
allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's
favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks

omitted). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). When, as here, the Plaintiff proceeds *pro se*, the Court must "'construe [the Complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).

## IV.   DISCUSSION

### a. *Rooker–Feldman* Doctrine

Defendants argue that the Court lacks subject matter jurisdiction over this matter

8

under the *Rooker–Feldman* doctrine.  The Court disagrees.

"*Rooker–Feldman* bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015)(quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed.2d 454 (2005)).  To satisfy the requirements of *Rooker–Feldman*, a defendant must satisfy the following four requirements:

> First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must complain of injuries caused by a state-court judgment.  Third, the plaintiff must invite district court review and rejection of that judgment.  Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

*Id.* (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Defendants' *Rooker–Feldman* argument fails on the second and third requirements.

"The causation requirement is only satisfied if 'the third party's actions are produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Id.* (quoting *Hoblock*, 422 F.3d at 88).  "*Rooker–Feldman* does not prevent [a] plaintiff from raising federal claims based on the same facts as a prior state court case as long as the plaintiff complains of an injury independent of an adverse decision." *Ceraldi v. Strumpf*, No. 3:17-CV-1628 (WWE), 2018 WL 1587467, at *2 (D. Conn. Apr. 2, 2018).  Plaintiff asserts claims alleging injuries independent of the state-court judgment.  The "claims sounding under the FDCPA, RICO, and state law speak not to the propriety of the state court judgment[], but to the fraudulent course of conduct that defendants pursued in obtaining

9

[the] judgment[]." *Sykes*, 780 F.3d at 94–95.

Moreover, "Plaintiff is not asking the federal courts to overturn the underlying state-court judgment. Rather, he is alleging that the Defendants' conduct in their attempts to collect on that judgment violated [federal statutes and state law] and, as a result, that he is entitled to money damages." *McCrobie v. Palisade Acquisition XVI, LLC*, 664 Fed. Appx 81, 83 (2d Cir. 2016).  "Although [the claims in this action] may deny a legal conclusion of the [Kingston City Court]- namely, that Defendants are legally entitled to recover on the . . . debt, . . . [t]his action, in which Plaintiff primarily seeks money damages, would continue even if the state-court judgment were vacated." *Mascoll v. Strumpf*, No. 05-CV-667 (SLT), 2006 WL 2795175, at *8 (E.D.N.Y. Sept. 26, 2006).

For these reasons, the *Rooker-Feldman* doctrine does not bar this action. Defendants' motion in this regard is denied.

### b.     Res Judicata and Collateral Estoppel

Defendants also argue that Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel. For the reasons that follow, this aspect of Defendants' motion is denied with leave to renew.

Federal courts are required to give a prior state court decision the same preclusive effect under either res judicata or collateral estoppel that courts of that state would give to that decision. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982).  State law determines whether a prior state-court proceeding has any preclusive effect in a subsequent action pending in federal court.  *See Fayer v. Middlebury*, 258 F.3d 117, 124 (2d Cir. 2001).

10

### 1.  Res Judicata

Under the doctrine of res judicata, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotations omitted).   "Under New York's transactional approach to [res judicata], once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008)(quoting *In re Derek Josey*, 880 N.E.2d 18 (NY 2007)).  Res judicata does not require that a claim actually had been litigated to be precluded, but it does require that the party against whom it is applied had a full and fair opportunity to litigate the claim. *See EDP Med. Computer Sys.*, 480 F.3d at  626; *Matter of Hunter*, 4 NY3d 260, 269 (NY 2005).

Plaintiff contends, *inter alia*, that he did not have a full and fair opportunity to litigate in the Kingston City Court.  This argument is supported by the present record.   While "it has long been the law that default judgments can support res judicata as surely as judgments on the merits," *EDP Med. Computer Sys.*, 480 F.3d at 626; *see Lazides v. P & G Enterprises*, 58 A.D.3d 607, 871 N.Y.S.2d 357 (2009) ("It is well settled that default judgments can have res judicata effect."), Plaintiff contends he was denied any opportunity to litigate the debt collection claim because of the fraudulent scheme perpetrated by Defendants.  Looking only at the default judgment determination, and presuming the truth of Plaintiff's allegations of a fraudulent scheme that prevented him from learning of the state court action until years after the default judgment was issued, Plaintiff presents a sufficient

11

argument to deny application of res judicata. *See Aghaeepour v. N. Leasing Sys., Inc.,* 378 F. Supp. 3d 254, 265-66 (S.D.N.Y. 2019).[3]  Although Plaintiff's post-judgment application to vacate the default judgment could countervail the conclusion that he was denied all opportunity to litigate in the Kingston City Court, Plaintiff points out that the decision to deny this application was made by a court clerk and not a judicial officer.  *See* Compl. Ex. 2, p. 2. Absent evidence or authority indicating that the Kingston City Court Deputy Chief Clerk's denial of Plaintiff's post-judgment application properly represented the decision of the Kingston City Court (or a judicial officer therein), the Court will not apply res judicata at this time.  Defendants are free to renew this argument at a later time.

## 2.  Collateral Estoppel

"Collateral estoppel, or issue preclusion, is a doctrine related to, but distinct from, res judicata." *Quadrozzi Concrete Corp. v. City of New York*, 2004 WL 2222164, at *5 (S.D.N.Y. Sept. 30, 2004) (citing *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999)).   It is an affirmative defense*, see, Austin v. Fischer*, 453 Fed. Appx. 80, 82 (2d Cir. 2011), and cannot be granted on a Rule 12(b)(6) motion unless it is clear from the face of the pleading

---

[3]The Southern District wrote in *Aghaeepour:*

"[R]es judicata exists to ensure that litigants to do not get two bites at the apple and waste judicial resources relitigating issues that have or could have already been decided. Restatement (Second) of Judgments § 24(2) (1982)("a plaintiff cannot avoid the effects of res judicata by splitting his claim into various suits, based on different legal theories). Because the main interest is preventing duplication, while "a party who has lost a case as a result of alleged fraud or false testimony cannot collaterally attack the judgment in a separate action," there is a long-standing exception to the rule which provides that "a separate lawsuit may be brought where the alleged perjury or fraud in the underlying action was 'merely a means to the accomplishment of a larger fraudulent scheme'... 'which was greater in scope than the issues determined in the prior proceeding.'" *Specialized Indus. Servs. Corp. v. Carter*, 68 A.D.3d 750, 890 N.Y.S.2d 90 (2009) (citing *id.*)

*Aghaeepour,* 378 F. Supp. 3d at  265-66.

that the claim is barred as a matter of law. *Cayuga Indian Nation of New York v. Seneca Cty., New York*, 260 F. Supp. 3d 290, 302 (W.D.N.Y. 2017)(citations omitted).  Under New York law, collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (citing *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494 (1984)).  The doctrine applies if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007), *cert. denied* 552 U.S. 1179 (2008) (quotation omitted).

Although Plaintiff's affidavit in support of his application to vacate the default judgment placed before the Kingston City Court issues pertinent to the claims in this case, s*ee* Compl. Ex. 2, pp. 5-7,[4] a question exist as to whether Plaintiff had a full and fair opportunity to litigate these issues.  Thus, like with res judicata, Defendants' motion based upon collateral estoppel is denied with leave to renew at a later time.

### c. FDCPA

Defendants argue that Plaintiff's FDCPA claims should be dismissed.  For the reasons that follow, this aspect of Defendants' motion is granted in part and denied in part.

Plaintiff appears to have modeled his FDCPA cause of action on one used in a case

---

[4](*i.e.,* whether he had been served with the summons and complaint, whether that court had personal jurisdiction over him, whether the statute of limitations on the debt collection claim had expired, whether the information subpoena and restraining notice had been properly served upon him, and whether Defendants had improperly executed the information subpoena and restraining notice against exempt assets)

13

involving multiple plaintiffs, judgments, and enforcement actions. *See* Compl. ¶ 46. [5]

Because there is only one judgment and enforcement action relevant to Plaintiff's FDCPA

claims, the Court interprets the substantive allegations of the FDCPA claims (Compl. ¶ 46)

as pertaining to the Kingston City Court default judgment and ensuing enforcement action.

The Court turns first to the allegation that the default judgment was obtained by

fraud.  Plaintiff contends that this judgment was obtained by fraud because he was never

served with the summons or complaint yet Warshall submitted a false affidavit of service;

that the Kingston City Court did not have personal jurisdiction over him because he did not

live within the City of Kingston; the action sought monetary damages in excess of the

statutory limit in the Kingston City Court; the claim was barred by the applicable statute of

limitations; Defendant Lam submitted an affidavit of merit falsely claiming that he had

personal knowledge that Plaintiff owed the debt that was the subject of the lawsuit; and that

---

[5]Plaintiff alleges:

46. Defendants violated the FDCPA by making false and misleading misrepresentations and engaging in unfair and unconscionable practices. Defendants' violations include, but are not limited to:

> a. Enforcing judgments that Defendants knew or reasonably should have known were obtained by fraud, including by freezing plaintiffs bank account;
>
> b. Making false and deceptive representations to the New York State courts, Nassau County Sheriff's Department and Marshals, and county sheriffs representing to them that the judgment was just as legitimate and trustworthy as other judgments;
>
> c. Collecting the Judgments without providing actual notice of the assignments to the judgment debtors;
>
> d. Collecting and attempting to collect the Judgment without conducting a meaningful attorney review of the files to determine whether the judgment was entered based on false affidavits of merit, false affidavits of service, and/or whether the judgment debtors received actual notice of the assignments.

Compl. ¶ 46.

Plaintiff never received a dunning letter.  The Court addresses these theories below.

It is recognized that the practice of obtaining a default judgment by filing false affidavits of service, colloquially referred to as "sewer service," presents an actionable claim under the FDCPA. *See Guzman v. Mel S. Harris & Assocs., LLC*, No. 16 CIV. 3499 (GBD), 2018 WL 1665252, at *9 (S.D.N.Y. Mar. 22, 2018)("'[S]ewer service practice, followed by obtaining a default judgment, falls squarely within the actions prohibited' by section 1692e [of the FDCPA.]  Such practices may also violate section 1692f.")(quoting *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 576 (S.D.N.Y. 2015), and citing *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 424 (S.D.N.Y. 2010)(finding "the filing of a debt collection action ... supported by affidavits that contained false or deceptive representations about the status and character of the debt" may violate 1692e, and "could also be deemed 'unfair or unconscionable' in violation of 15 U.S.C. § 1692f") and *Scott v. Greenberg*, No. 15-Civ.- 5527 (MKB), 2017 WL 1214441, at *11 (E.D.N.Y. Mar. 31, 2017) ("[S]ewer service allegations [are] sufficient to allege an FDCPA claim under sections 1692d, 1692e, and 1692f.")).  Plaintiff's claim that the default judgment was obtained by the use of a false affidavit of service states a plausible FDCPA claim.  Whether Plaintiff's FDCPA claim on this theory is barred by collateral estoppel will have to await a determination whether Plaintiff's post-judgment application in the Kingston City Court constituted a full and fair opportunity to litigate in that court.

Plaintiff's claims that the Kingston City Court did not have personal jurisdiction over him, that the action sought monetary damages in excess of the statutory limit, and that the claim was barred by the applicable statute of limitations appear to part of Plaintiff's claim

that the default judgment was obtained by the use of a false affidavit of merit.  To the extent

Plaintiff maintains that these are the reasons the affidavit of merit was false,[6] Plaintiff

presents plausible claims under the FDCPA.  "While the filing of a debt collection action

alone does not violate the FDCPA, if the complaint was supported by affidavits that

contained false or deceptive representations about the status and character of the debt, *see*

15 U.S.C. § 1692e(2)(A), (10), then the filing of the state action could also be deemed

"unfair or unconscionable" in violation of 15 U.S.C. § 1692f." *Sykes*, 757 F. Supp. 2d at 44;

*see Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 86 (2d Cir. 2015)("False affidavits

of merit ... provide independent bases for liability for ... claims" brought under the FDCPA

and GBL § 349).  Again, whether this claim is barred by collateral estoppel will have to await

---

[6]In the Complaint, Plaintiff contends that Defendant Lam, who submitted the affidavit of merit, lied about having personal knowledge that the action had merit "without actually having reviewed [the] credit agreement[], promissory note[], or underlying documents." Compl. ¶ 21, *see also* Compl., ¶¶ 24, 25, 29(g), 54(d), ¶ 91.  Lam's "Affidavit of Facts in Support of Judgment" attests that Plaintiff had an agreement with MBNA America Bank, N.A., from which he was indebted in the amount of $11,424.67 plus 21.99% interest from 3/29/2002. Compl., Ex. 1, p. 6.  The closest this affidavit comes to addressing the issues of personal jurisdiction, the limitation on the Kingston City Court's statutory authority to award monetary damages, and the applicable statute of limitations is where Lam asserts that "[u]pon information and belief, [Robert Bruce Carroll] has no valid defense in this action herein." *Id.*  Reading the Complaint liberally, and interpreting it to raise the strongest argument that it suggests, the Court will, for purposes of this motion, interpret Plaintiff's FDCPA "false affidavit of merit" claim as alleging that Strumpf commenced the Kingston City Court action using the Affidavit of Merit knowing that the case lack merit for these reasons. *See* Pl. Mem. L. at 10 ("The fraudulent and misleading representations and predicate acts of attorney Strumpf, which have been alleged by the plaintiff, are that in 2008 she filed a summons and complaint, three false affirmations on January 14, 2009, and knowingly filed a fraudulent affidavit of service with the Kingston City Court on January 16, 2008. Defendant Strumpf pursued this default judgment knowing that the plaintiff did not live in Kingston, NY or a contiguous town, knowing that the amount sought was in excess of the statutory limit of a city court. She also knew that the affidavit of service by defendant Warshall was fraudulent, and that the statute of limitations had already run.")
     The Court also notes that Plaintiff has not directly asserted that he did not owe the debt that was the subject of the default judgment.  Nevertheless, even if this is the case it does not necessarily defeat a FDCPA claim. *See Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 292 (S.D.N.Y. 2012), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC,* 780 F.3d 70 (2d Cir. 2015)("Liability under the FDCPA can be established irrespective of whether the presumed debtor owes the debt in question.")(citing *Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471, 477 (S.D.N.Y. 2005) ("[T]he [FDCPA] protects consumers from 'unscrupulous debt collectors, regardless of whether a valid debt actually exists.'")(quoting *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir.1982)).

a determination whether Plaintiff had a full and fair opportunity to litigate this issue in the
Kingston City Court.

Plaintiff has not argued that Defendants' failure to send him a dunning letter presents
a plausible FDCPA claim. *See* Pl. Mem. L., at 10.  Absent such argument, any such claim is
dismissed.

As to Plaintiff's claim that Defendants violated the FDCPA by making false and
deceptive representations to the Kingston City Court and the Nassau County Sheriff's
Department, it is unclear to what representations Plaintiff refers.  If it is to the alleged false
representations in the affidavits of service and merit presented to the Kingston City Court,
then, for the reasons discussed above, Defendants' motion addressed to these FDCPA
claims is denied.  However, the Complaint fails to contain allegations of false
representations to the Nassau County Sheriff's Department.  While Plaintiff alleges that
"[t]he default judgment was never filed with the Ulster County Clerk's office, which would
have been necessary before the Nassau County Sheriff's Department could execute the
judgment against plaintiff's bank account, " Compl. ¶ 37, he does not allege that Defendants
falsely represented to the Nassau County Sheriff's Department that the default judgment
had been filed with the Ulster County Clerk's Office.  Therefore any FDCPA claim based on
representations made to the Nassau County Sheriff's Department is dismissed.

Regarding Plaintiff's claim that the Defendants violated the FDCPA because they
failed to provide him actual notice of "the assignment," Defendants contend: "Plaintiff is
apparently referring to CPLR § 5019(c) which requires a person who acquires rights to a
judgment to file a copy of the assignment of the judgment with the clerk of the court.  This is
inapplicable since Equities is the original plaintiff in the state action."  Def. Mem. L., at 13.

17

Plaintiff did not respond to the aspect of the Defendants' motion and therefore is deemed to have abandoned any claim in this regard. *See Thurmand v. Univ. of Connecticut*, No. 3:18-CV-1140 (JCH), 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019)("Courts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them.")(collecting cases); *Russell v. N.Y. Univ.*, No. 1:15-cv-2185, 2017 U.S. Dist. LEXIS 111209, at *99 (S.D.N.Y. July 17, 2017)(failure to address defendant's arguments for dismissal of claims deems those claims abandoned); *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp.3d 387, 410 (S.D.N.Y. Sept. 30, 2015)(dismissing claim as abandoned when the plaintiff failed to respond to the arguments on a motion to dismiss). Thus, any FDCPA claim premised on the allegation that Defendants failed to notify Plaintiff of the assignment of the Kingston City Court judgment is dismissed.  To the extent Plaintiff is contending that Defendants violated the FDCPA because they failed to provide him with notice that the debt incurred with MBNA America Bank, N.A., was assigned to U.S. Equities, *see* Compl., Ex. 1, p. 6, the claim is without merit.  New York law requires that the assignor provide the debtor with a notice of assignment, not the assignee.  *Strobel v. RJM Acquisitions LLC*, No. 13-CV-2467 (JS/AKT), 2014 WL 507510, at *4 (E.D.N.Y. Feb. 6, 2014)(citation omitted).   "[T]here is no valid cause of action under the FDCPA for any purported failure by Defendant[s] to provide the notice of assignment to Plaintiff, at least in this context." *Id.* (citation omitted).  Accordingly, Defendants' motion in this regard is granted and any FDCPA claim premised on lack of notice of assignment of the underlying debt is dismissed.

   Turning to Plaintiff's contention that Defendants violated the FDCPA because they

collected or attempted to collect on the judgment without conducting a meaningful attorney review of whether the judgment was entered based on false affidavits of merit or false affidavits of service, this is simply a recasting of the claims addressed above.  For the reasons addressed to Plaintiff's FDCPA claims based on the affidavits of service and merit, Defendants' motion is denied.  To the extent Plaintiff asserts an FDCPA claim on the theory of lack of meaningful attorney involvement under 15 U.S.C. §1692e(3), the claim is dismissed as abandoned and for lack of merit. *See* Pl. Mem. L., Dkt. 18-1, p. 10 ("[T]he FDCPA's 'meaningful involvement' requirement means that if an attorney debt collector sends a letter, on the attorney's letterhead, the attorney must actually be involved in the collection process. . . .  In the case at bar, the Plaintiff never received a Dunning letter, and since Strumpf <u>was</u> involved in the collection process, apparently this is a moot point.")(emphasis in original).

Plaintiff argues in his memorandum of law that the money seized from his bank account were exempt funds yet Defendants failed to comply with New York CPLR 5222-a which would have provided him an opportunity to file an exemption claim.  However, he does not specifically allege in the Complaint that Defendants' omission in this regard amounted to a FDCPA violation. *See* Compl., ¶ 42-46.  Nevertheless, he asserts in the section of the Complaint addressed to whether he is entitled to equitable tolling of the statutes of limitations on the claims in this action:

> 96. The defendants never provided the plaintiff with a copy of the information subpoena, or any documents concerning the execution of the fraudulent default judgment, although defendants were aware of his current address, known by his bank, the Navy Federal Credit Union.
>
> 97. The foregoing misconduct and fraudulent concealment deprived plaintiff of ... a [*sic*] exemption hearing related to his exempt veterans benefits . . . .

19

Compl. ¶¶ 96-97.

Reading the Complaint broadly, and interpreting it to raise the strongest argument it suggests, Plaintiff appears to allege that Defendants violated the FDCPA by failing to provide him with restraining notice as required by New York law, thereby preventing him from interposing a claim that the funds in his bank account were exempt.  This presents a plausible FDCPA claim. *See Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-CV-7539 (MKB), 2016 WL 1274541, at *11 (E.D.N.Y. Mar. 31, 2016)("Section 1962e(10) is a 'catch-all' provision that prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."); *see, e.g.*, *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 139 (2d Cir. 2017)("GMBS argues that Arias cannot recover under the FDCPA because [New York's Exempt Income Protection Act] provides for sanctions when a judgment creditor files an objection in bad faith. *See, e.g.* N.Y. C.P.L.R. § 5222–a(c)(4), (g).  But abusive debt collection practices may violate both the FDCPA and State law. The FDCPA's express purpose includes 'promot[ing] consistent State action to protect consumers against debt collection abuses.' 15 U.S.C. § 1692(e). The legislative history confirms this purpose . . . .  We therefore reject the argument that the remedial scope of the FDCPA is limited by State law.").

In the exercise of discretion and affording Plaintiff the special solicitude extended to *pro se* litigants, Plaintiff is granted leave to file an amended complaint to reassert the dismissed FDCPA claims. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[A] district court should not dismiss a *pro se* complaint without granting leave to amend at least

20

once when a liberal reading of the complaint gives any indication that a valid claim might be stated.")(interior quotation marks and citation omitted).

### d. RICO Claims

Defendants argue that Plaintiff's RICO claims must be dismissed because, *inter alia*, his alleged RICO predicate acts are routine litigation activities that cannot properly form the basis of a RICO claim.  The Court agrees.

Plaintiff maintains that Defendants engaged in a racketeering enterprise and conspiracy, in violation of 18 U.S.C. § 1962(c) & (d).  *See* Compl., ¶ 53. Those sections of law state:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c) & (d).  "'Racketeering activity' is in turn defined to include a litany of so-called predicate acts, including 'any act which is indictable' under the mail and wire fraud statutes." *In re U.S. Foodservice, Inc. Pricing Litigation*, 729 F.3d 108, 117 n. 5 (2d Cir. 2013) (citing 18 U.S.C. § 1961(1)(B)); *Snyder v. U.S. Equities Corp.*, No. 12-CV-6092 (CJS), 2014 WL 317189, at *6 (W.D.N.Y. Jan. 28, 2014)(same). "To satisfy the 'pattern of racketeering activity' requirement, the statute requires 'at least two acts of racketeering activity ... the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.'" *U.S. v. Cain*, 671 F.3d 271, 284 (2d Cir. 2012) (citing 18 U.S.C. § 1961(5)); *Snyder*, 2014 WL 317189, at *6 (same).

21

Plaintiff alleges that Defendants engaged in acts of mail fraud and wire fraud. *See*

Compl., ¶¶ 56-60.  More specifically, the Complaint states, in pertinent part:

56. Defendants, acting individually and as part of the Enterprise, have used the mails and wires and have caused the mails and wires to be used, or reasonably knew the mails and wires would be used, in furtherance of their fraudulent scheme. Specifically:

>  a) On or about June 16, 2008, defendants used the mails to deliver a fraudulent affidavit of service to the Kingston City Court Clerk.
>
>  b) On or about January 6, 2009, defendants used the mails to deliver a fraudulent affidavit with the Kingston City Court Clerk.
>
>  c) On or about January 14, 2009, defendants used the mails to deliver fraudulent attorney's affirmations with the Kingston City Court Clerk.
>
>  d) Thereafter, defendants used the telephone in an attempt to collect a debt from plaintiff.

57. Defendants used the mails and wires in connection with every default judgment that they have fraudulently obtained, and each use of the mails and wires has furthered their fraudulent scheme.

58. Upon information and belief, each defendant had specific actual knowledge that the mail and wires were being used in the furtherance of the fraudulent purpose of their Enterprise. In fact, under the New York Civil Practice Law and Rules, use of the mail was a requirement for substituted service and/or "nail and mail", methods of service consistently cited in the affidavits of service relied upon by the defendants.

59. Further, defendants consistently used the mail to file all of the required pleadings, exhibits and documents required to obtain each of the default judgments obtained against thousands of debtor/defendants.

60. Each of the thousands of uses of the mail and wires in connection with defendants' fraudulent scheme, spanning a period of over five years, constitutes a separate instance of mail and/or wire fraud within the meaning of 18 U.S.C. § 1341 and 1343, and thus is also a predicate act, which taken together, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961 and § 1962.

Compl. ¶¶ 56-60.

In *Snyder v. U.S. Equities Corp*., Judge Siragusa dismissed strikingly similar RICO

claims on the grounds that the complaint failed to allege actionable predicate acts of

racketeering, *Snyder*,  2014 WL 317189, at *7-9, observing that "[t]here are . . .  a

significant number of decisions, in this Circuit and in other Circuits, which hold, in the

context of Civil RICO claims based on fraudulent litigation, that a defendant's use of mail

and wire to conduct allegedly fraudulent 'litigation activities' is insufficient to establish

predicate acts of racketeering." *Id*., at *7 (collecting cases).[7]  In dismissing the claim, Judge

Siragusa distinguished the holding of *U.S. v. Eisen*, 974 F.2d 246 (2d Cir.1992), in which

the Second Circuit reviewed a group of defendants' convictions under the RICO criminal

---

[7]In this regard, Judge Siragusa cites to *Daddona v. Gaudio*, 156 F. Supp.2d 153, 161–162 (D. Conn. 2000) ("In his amended RICO Case Statement, Daddona characterizes the pattern of racketeering as follows: 'The pattern of racketeering activity carried on by the defendants is to engage in extensive litigation filing of false documents and affidavits which is a pattern ... defendants have engaged in similar conduct in other litigation [.]' These allegations at best amount to a vague abuse of process or malicious prosecution claim. Courts have found that allegations of malicious prosecution or abuse of process do not, on their own, suffice as predicate acts for a RICO violation.") (collecting cases; citation and internal quotation marks omitted); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267–268 (8th Cir.1984) ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy.  Resort to a federal criminal statute is unnecessary."); *Gabovitch v. Shear*, 70 F.3d 1252 (table), 1995 WL 697319 at *2 (1st Cir. Nov. 21, 1995) ("Numerous courts have held that the filing of litigation-no matter how lacking in merit-does not constitute a predicate racketeering act of extortion.... Plaintiff's mail fraud claim [involving the mailing of fraudulent affidavits to a court] likewise proves deficient."); *U.S. v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("Serving a motion by mail is an ordinary litigation practice.  A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility.... [T]hese courts have rejected this mail-fraud theory on policy grounds, recognizing that such charges are merely artfully pleaded claims for malicious prosecution.") (collecting cases, citation and internal quotation marks omitted); *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp.2d 153, 174 (E.D.N.Y. 2010) ("[T]he Congressional intent in enacting RICO does not square with the absurd consequences and contraventions of well-settled public policy which would inevitably result from allowing RICO predicate acts to be based upon the type of malicious prosecution claims alleged here."), *aff'd*, 443 Fed. Appx. 582 (2d Cir. 2011); *Weaver v. James*, No. 10-Civ.-6609 (NRB), 2011 WL 4472062 at *4 (S.D.N.Y. Sep. 27, 2011) (Observing that attempts to "characterize abuse of process or malicious prosecution claims as mail and wire fraud violations for RICO purposes" have been rejected by courts); *Chandler v. Suntag*, 2011 WL 2559878 at *6–7 (D. Vt. 2011) ("In general, litigation activities do not 'properly form the basis for RICO predicate acts.'") (quoting *Curtis & Assocs., P.C.*, 758 F. Supp. 2d at 171); *Luther v. American Nat. Bank of Minnesota*, Civ. No. 12–1085 (MJD/LIB), 2012 WL 5471123 at *6 (D. Minn. Oct.11, 2012) ("Even if any litigation documents that were filed by the Defendant's counsel in the state court proceedings were false or fraudulent, as numerous courts around the country have held, such documents, generally, cannot be the basis of a RICO claim.").

statue. *See Snyder*,  2014 WL 317189, at *8.

> *Eisen* involved the criminal prosecution of seven attorneys, investigators, and office personnel of a Manhattan law firm ("the Eisen Firm") which specialized in bringing personal injury suits on behalf of plaintiffs.  *Eisen*, 974 F.2d at 251. The evidence at trial in that case showed that the defendants conducted the affairs of the Eisen Firm through a "pattern of mail fraud and witness bribery by pursuing counterfeit claims" by, among other things "pressuring accident witnesses to testify falsely, paying individuals to testify falsely ..., paying unfavorable witnesses not to testify, and creating false ... evidence for use before and during trial." *Id.* Thus, in *Eisen*, the defendant attorneys "went well beyond their capacities as legal representatives" in conducting their fraudulent scheme. *See Morrow v. Blessing*, No. 04–cv–1161, 2004 WL 2223311, at *5, 2004 U.S. Dist. LEXIS 20318, at *16 (E.D. Pa. Sept. 20, 2004).

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 175

(E.D.N.Y. 2010), *aff'd sub nom. Curtis v. Law Offices of David M. Bushman, Esq.*, 443 F.

App'x 582 (2d Cir. 2011).  The Second Circuit concluded in *Eisen*:

> [W]here, as here, a fraudulent scheme falls within the scope of the federal mail fraud statute and the other elements of RICO are established, use of the mail fraud offense as a RICO predicate act cannot be suspended simply because perjury is part of the means for perpetrating the fraud. We do not doubt that where a series of related state court perjuries occurs, it will often be possible to allege and prove both a scheme to defraud within the meaning of the mail fraud statute as well as the elements of a RICO violation. But in such cases, it will not be the fact of the perjuries alone that suffices to bring the matter within the scope of RICO. In any event, we cannot carve out from the coverage of RICO an exception for mail fraud offenses that involve state court perjuries.

*Eisen*, 974 F.2d at 254.

Judge Siragusa found that *Eisen* was inapplicable because "Plaintiff's claim arises

from the fact of the bogus lawsuit against her, and from Defendants' alleged use of perjured

documents to obtain a default judgment against her. The alleged racketeering activity is the

fraudulent lawsuit. The fact that Plaintiff has  . . .  alleged that Defendants acted in identical

fashion toward many other persons, does not, in the Court's view, permit the denial of

24

Defendants' motion." *Snyder,* 2014 WL 317189, at \*8 (citations omitted).  The Court agrees with this analysis, and applies it here.  Although Plaintiff alleges a course of conduct by Defendants to engage in mail fraud activities, these all pertain to litigation activities. They do not include fraudulent conduct beyond mere litigation activities, as in *Eisen. See Curtis & Assocs., P.C.,* 758 F. Supp. 2d at 176 ("[T]he predicate acts in *Eisen* amounted to far more than mere 'litigation activities,' and instead involved an extensive and broader scheme to defraud defendants in the personal injury lawsuits commenced by the Eisen Firm.").  Moreover, although Plaintiff alleges that the Defendants engaged in a broad course of conduct, the only conduct by which Plaintiff was seemingly injured was the litigation activity pertaining to the Kingston City Court case against him.  Therefore, the Court finds that *Eisen* is distinguishable.  The Court also agrees with Judge Siragusa's reason to distinguish *Sykes v. Mel Harris and Associates, LLC*, 757 F. Supp.2d 413 (S.D.N.Y. 2010). *See Snyder*, 2014 WL 317189, at \*9 ("There is no indication . . . that the particular issue being discussed here was raised in *Sykes*. In that regard, the *Sykes* decision contains no discussion as to whether the defendants' fraudulent litigation activities qualified as predicate acts under RICO, in light of the line of cases represented by [*Daddona v. Gaudio*, 156 F. Supp.2d 153 (D. Conn. 2000)] and the other cases cited above, nor does the decision mention *Eisen*.  Therefore, while the *Sykes* decision reaches the result that Plaintiff wants, it does not explain how or why this Court could reach the same result, in light of established authority.").

Because the overwhelming weight of authority bars a civil RICO claim based on the use of the mail or wire to conduct allegedly fraudulent litigation activities as predicate

racketeering acts, Defendants' motion to dismiss Plaintiff's RICO claims is granted. *See Avraham v. Lakeshore Yacht & Country Club, Inc*., No. 5:15-CV-1297, 2016 WL 6585589, at *12 (N.D.N.Y. Nov. 7, 2016) ("[A] defendant's 'use of mail and wire to conduct allegedly fraudulent 'litigation activities' is insufficient to establish predicate acts of racketeering.'")(quoting *Snyder*, 2014 WL 317189, at *7); *Saluzzo v. Greenbaum*, No. 110-CV-649 (GLS\RFT), 2011 WL 13234286, at *3 (N.D.N.Y. Feb. 4, 2011)("[W]hile mail and wire fraud do constitute predicate acts under RICO, . . . allegations of mail or wire fraud are nonetheless insufficient to plead the necessary predicate act where the focus of those allegations is the defendant's litigation activities in pending litigation.")(citation omitted)*; Estate of Izzo v. Vanguard Funding, LLC,* No. 15-CV-7084 (ADS/GRB), 2017 WL 1194464, at *11 (E.D.N.Y. Mar. 30, 2017)("[E]ven assuming that Urban Financial's August 29, 2011 mailing satisfies the elements of mail fraud—a proposition that is questionable on the current record—the RICO claim fails because the service and filing of litigation documents in the Foreclosure Action cannot plausibly support a cognizable claim."); *Snyder*, 2014 WL 317189, at *7 (and cases cited thereat); *Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 61 (D.D.C. 2019)("Courts do not allow allegedly fraudulent 'litigation activities,' such as filing fraudulent documents or engaging in baseless litigation to serve as predicate acts for RICO ... where such acts constitute 'the only allegedly fraudulent conduct.'") (quoting *Feld Entm't, Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp.2d 288, 318–19 (D.D.C. 2012), in turn quoting *Daddona*, 156 F. Supp.2d at 162); *Quick v. EduCap, Inc.*, 318 F. Supp.3d 121, 141–42 (D.D.C. 2018) ("As Plaintiffs' RICO claim is premised entirely on mailings done for the purpose of litigation activity, they have failed to state a

claim."); *E. Sav. Bank*, *FSB v. Papageorge*, 31 F. Supp.3d 1, 13 (D.D.C. 2014) ("Abusive or sham litigation does not constitute a RICO predicate act.") (collecting cases), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015); *see also Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016) ("[P]rosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system.  Moreover, allowing such charges would arguably turn many state-law actions for malicious prosecutions into federal RICO actions.")(quoting *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002)); *Auburn Med. Ctr., Inc. v. Andrus*, 9 F. Supp.2d 1291, 1298 (M.D. Ala. 1998) ("Numerous other courts have found that the actions underlying claims for malicious prosecution, or analogous actions in the litigation context, will not support a RICO action."). Although it appears unlikely from the allegations in the Complaint that Plaintiff could plead viable RICO claims, *see Cuoco*, 222 F.3d at 112 (leave to amend a complaint should be denied if any amendment would be futile), the Court will exercise its discretion and grant Plaintiff leave to file an amended complaint reasserting RICO claims.

**e.  New York General Business Law § 349**

Defendants move to dismiss Plaintiff's GBL § 349 claim.  The motion in this regard is denied.

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." GBL § 349(a).  To assert a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage, Inc. v.*

27

*Progressive Casualty Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017); *see Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (NY 2000)(same).  The "consumer oriented" prong is satisfied by showing that the acts forming the basis of the complaint are not private disputes but instead could have a broad impact on "consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (NY 1995).  "Private contract disputes, unique to the parties,' however, do not 'fall within the ambit of the statute." *Oswego*, 85 N.Y.2d at 25.  Thus, acts within the statute must "potentially affect similarly situated consumers." *Id.,* at 27.   However, some courts have held that in the context of debt collection cases, the "consumer oriented" prong can be "satisfied where the conduct forming the basis of the complaint was a 'normal part of defendants' business, in which case the practice could have a broad impact on consumers at large." *Winslow v. Forster & Garbus, LLP*, No. CV 15-2996 (AYS), 2017 WL 6375744, at *9 (E.D.N.Y. Dec. 13, 2017), *appeal withdrawn*, No. 18-116, 2018 WL 1840195 (2d Cir. Apr. 6, 2018)(internal quotation marks and citation omitted).

Plaintiff's GBL § 349 allegations are little more than an unadorned, the-defendant-harmed-me-accusation found to be insufficient insufficient in *Iqbal*. *See* Compl., ¶¶ 68-70.[8]   Further, as Defendants argue, the gist of Plaintiff's Complaint appears

---

[8]Plaintiff alleges:

68. New York prohibits "deceptive acts or practices in the conduct of any business. trade or commerce or in the furnishing of any setvice in this state ... " N.Y. Gen. Bus. Law § 349(a).

69. Defendants violated GBL § 349 by using deceptive acts and practices in the conduct of their business.  Specifically, Defendants engaged in deceptive acts and practices by and while enforcing and collecting on the Judgment.

70. Defendants' conduct has had a broad impact on consumers at large. Defendants committed the above-described acts willfully and/or knowingly. In particular, Defendants'

(continued...)

to arise from a private dispute surrounding the contract action in the Kingston City Court.

Nevertheless, because Plaintiff asserts that Defendants' actions in his case were consistent

with a pattern and practice Defendants utilized in thousands of other cases affecting others,

the Court will allow the GBL § 349 claim to proceed.  For the reasons discussed above, the

Court declines to rule on the application of res judicata or collateral estoppel to this claim.

### f.  New York Judiciary Law § 487

Defendants move to dismiss Plaintiff's New York Judiciary Law § 487 claim because,

they contend, he fails to allege a chronic or extreme pattern of deceit and wrongdoing to

sustain such a claim. The motion on this basis is denied.

Section 487 of the New York Judiciary Law provides in relevant that an attorney who

> [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with
> intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in
> addition to the punishment prescribed therefor by the penal law, he forfeits to
> the party injured treble damages, to be recovered in a civil action.

N.Y. Judiciary Law § 487.

"Section 487 thus permits a civil action to be maintained by any party who is injured

by an attorney's intentional deceit or collusion in New York on a court or on any party to

litigation, and it provides for treble damages." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123

(2d Cir.), *certified question accepted*, 11 N.Y.3d 728, 894 N.E.2d 643 (NY 2008), and

*certified question answered*, 12 N.Y.3d 8, 903 N.E.2d 265 (NY 2009)(citation omitted).  "The

act of deceit need not occur during a physical appearance in court; the statute applies to

---

[8](...continued)
    deceptive acts and practices have caused injury and damages to Plaintiff.
 Compl.,  ¶¶ 68-70.

any oral or written statement related to a proceeding and communicated to a court or party with the intent to deceive." *Id.* (citations omitted).

> It would appear that some courts in New York have imposed an additional prerequisite to recovery: that the plaintiff in a section 487 action show a chronic and extreme pattern of legal delinquency by the defendant. That requirement appears nowhere in the text of the statute, however, and other courts have found attorneys liable under the statute for a single intentionally deceitful or collusive act.

*Id.* (interior quotation marks and citations omitted).

Plaintiff asserts that "by filing deceptive and misleading affirmations in obtaining a default judgment against Robert Carroll, Defendant LINDA STRUMPF engaged in deceit or collusion, or consented to deceit and collusion, with the intention to deceive courts and opposing parties." Compl. ¶ 74. Plaintiff further alleges that "Defendant Strumpf, acting in concert with the other Defendants, repeatedly and persistently prepared, signed, submitted and filed false and fraudulent affidavits, affirmations and pleadings in this and thousands of other actions with courts and county clerks throughout New York State." *Id.* ¶ 75. It is also asserted that Strumpf, "at all times relevant, knew the aforementioned acts were false, and/or acted in reckless disregard for their truth or falsity. Strumpf submitted and file[d] the aforementioned documents with the intent of deceiving the court and county clerks in order to fraudulently obtain default judgments against debtor/defendants." *Id.* 76. These allegations are sufficient to state a plausible Section 487 claim based on a chronic or extreme pattern of deceit and wrongdoing. In reaching this conclusion, the Court offers no opinion as to whether a chronic or extreme pattern of deceit and wrongdoing is required, whether Plaintiff has standing to rely on Strumpf's allegedly deceitful acts in other actions, whether the Section 487 claim can be brought in this court, *see Melnitzky v. Owen*, 19

A.D.3d 201, 796 N.Y.S.2d 612, 612–13 (NY App. Div. 2005)(New York law requires a Section 487 claim against an attorney be brought in the action in which the fraud occurred), and whether res judicata or collateral estoppel bars the claim. *See, e.g.*, *Heriveaux v. Lopez-Reyes*, No. 18-1433-CV, 2019 WL 2611058, at *1 (2d Cir. June 26, 2019)("[W]e agree with the District Court that this [Section 487] claim is barred by res judicata.")(citing *Robert v. Stephanie R. Cooper, P.C.*, 114 A.D.3d 456, 979 N.Y.S.2d 585, 586 (NY App. Div. 2014)).

### g.  Malicious Prosecution

Defendants argue that Plaintiff's New York state common-law claim of malicious prosecution must be dismissed because the state court action did not terminate in his favor. The Court agrees.

To prevail on a malicious prosecution claim under New York law, the plaintiff must show: "(1) the defendant initiated a prosecution against [the] plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in [the] plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (alterations and internal quotation marks omitted).  The Kingston City Court action clearly did not terminate in Plaintiff's favor.  He contends, however, that he has drafted a New York State Supreme Court complaint challenging the judgment which "will be served upon the Defendants, once it is complete, if necessary." Pl. Mem. L., at 3.  He asserts that the Kingston City Court action "will ultimately fail" because it was commenced without personal jurisdiction over him, because it sought judgment in excess of the statutory limits of the Kingston City Court, because the statute of limitations on the claim had expired,

31

and because the default was based on a fraudulent affidavit of service. *Id.*, at  17.   The

argument is insufficient to challenge the finality of the matter in the Kingston City Court.

A judgment is presumptively valid until reversed or set aside. *See  All Terrain*

*Properties, Inc. v. Hoy*, 265 A.D.2d 87, 91 (NY App. Div. 2000)("A party against whom a

default judgment is entered without obtaining jurisdiction over his person may appear and

contest its validity or ignore the judgment and assert its invalidity whenever enforcement is

attempted.  The judgment, however, is presumptively valid until reversed or set aside.").[9]

To allow Plaintiff's malicious prosecution claim to proceed because might commence an

action that might vacate the judgment runs contrary to the well-respected doctrine of finality

of judgments.  Defendants' motion in this regard is granted, and Plaintiff's malicious

prosecution claim is dismissed without prejudice to renewal if a court vacates the Kingston

City Court judgment.

**V.    CONCLUSION**

Defendant's motion to dismiss the Complaint [Dkt. No. 15] is **GRANTED in part** and

**DENIED in part**.

The motion is granted in that:

-Any FDCPA claim based on the absence of a dunning letter is dismissed with leave
to amend;

-Any FDCPA claim based on false representations to the Nassau County Sheriff's
Department is dismissed with leave to amend;

---

[9] Moreover, Plaintiff's challenge to personal jurisdiction in the Kingston City Court action may itself be barred by res judicata or collateral estoppel because this  issue was raised in Plaintiff's post-judgment application and rejected. *See Fraccola v. 1st Choice Realty, Inc.*, 124 A.D.3d 1360, 1361 (N.Y. App. Div. 2015)("We conclude that plaintiff's challenge to the validity of the prior order on the ground that Supreme Court lacked subject matter jurisdiction is barred by the doctrines of collateral estoppel and res judicata because that issue has previously been fully litigated and determined to be without merit.").

-Any FDCPA claim based upon the failure to provide Plaintiff notice of the assignment of the underlying debt or the judgment in the Kingston City Court is dismissed with leave to amend;

-Plaintiff's RICO claims are dismissed with leave to amend; and

-Plaintiffs New York state common-law claim of malicious prosecution is dismissed without prejudice to renewal if a court vacates the Kingston City Court judgment.

The motion is denied in all other respects.

Plaintiff is given **thirty (30) days** from the date of this Decision and Order in which to submit an amended complaint.  Plaintiff is advised that an amended complaint **supersedes in all respects** the prior pleading.  Therefore, if Plaintiff files an amended complaint, he **must properly allege in the amended complaint all factual bases for all claims asserted therein, and the amended complaint must be in compliance with Rules 8 and 10 of the Federal Rules of Civil Procedure.**  Should Plaintiff fail to submit an amended complaint within thirty (30) days from the date of this Decision and Order (or ask for an extension of time to do so), the case will proceed on the claims that were not dismissed, and the claims that were dismiss with leave to amend will be deemed to have been dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: September 24, 2019

Thomas J. McAvoy
Senior, U.S. District Judge

33