**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT CARROLL,**

                 **Plaintiff,**

     v.                                    **1:18-CV-667**

**U.S. EQUITIES CORP., LINDA STRUMPF,**
**HAL SIEGEL, DAVID WARSHALL, WING**
**LAM,**
                 **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION and ORDER**

**I.    INTRODUCTION**

      Presently before the Court are Defendants U.S. Equities Corp., Linda Strumpf, and Hal Siegel's ("Defendants") motion for reconsideration of a portion of the Court's November 30, 2020 Decision and Order ("Order"), *see* Dkt. #s 56 (Def. Mot.), 59 (Def. Reply), and Plaintiff Robert Carroll's ("Plaintiff") opposition and cross-motion for reconsideration of a portion of that Order. *See* Dkt. # 58. The Court presumes familiarity with the Order, including the Court's recitation of the Rule 12(b)(6) standard addressed to motions to dismiss *pro se* complaints. *See, e.g.,* Order at 2-4.

**II.    STANDARD OF REVIEW**

      When a party files a motion for reconsideration, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can

1

point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995).  The Northern District of New York "recognizes only three possible grounds upon which a motion for reconsideration may be granted: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct clear error of law to prevent manifest injustice." *U.S. v. Li*, 2006 WL 2375475, at *1 (N.D.N.Y. 2006).

### III.   DISCUSSION

#### a. Defendants' Motion

Defendants' motion for reconsideration is addressed to that much of the Order that denied Defendants' motion to dismiss Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  *See* Dkt. 56-6.  First, Defendants argue that the Court erred in *sua sponte* reexamining its decision in its September 24, 2019 Decision and Order ("Prior Order") pertaining to whether Plaintiff had alleged sufficient predicate racketeering acts.  In the Prior Order, the Court dismissed with leave to replead Plaintiff's RICO claims because they appeared to rely only upon the allegedly fraudulent litigation activities in the debt collection action against Plaintiff in Kingston City Court ("Kingston City Court action"), which did not amount to sufficient predicate racketeering acts.  *See* Prior Ord. at pp. 25-26.  In the Order, however, the Court reexamined whether this proposition applied to the facts alleged in the Amended Complaint, and determined that it did not. The Court found that Plaintiff had alleged facts plausibly supporting the conclusion that his RICO claims were predicated upon conduct from a large-scale fraud scheme involving the

2

Defendants which included conduct beyond the allegedly fraudulent litigation activities in the Kingston City Court action. *See* Ord. at 21-30. Defendants argue that reconsideration of the Prior Order was improper because the allegations in the Amended Complaint were not materially different from those in the Complaint, there was no intervening change in the law, and "the Order never so much as uses the word 'error' when referencing the Court's earlier determination." Defendants' arguments in this regard are without merit.

> As Judge Sannes recently indicated:
>
> Under Federal Rule of Civil Procedure 54, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "A district court ... possesses the inherent authority to *sua sponte* reconsider its own interlocutory orders before they become final." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, No. 11-cv-3238, 2015 WL 545565, at *2, 2015 U.S. Dist. LEXIS 15909, at *7 (S.D.N.Y. Feb. 9, 2015). "*Sua sponte* reconsideration is appropriate where there is a need to correct a clear error or prevent manifest injustice, there is an intervening change in the applicable law, or new evidence is available." *Id.* (quoting *Benavidez v. Piramides Mayas Inc.*, No. 09-cv-9574, 2013 WL 2357527, at *3, 2013 U.S. Dist. LEXIS, at *7–8 (S.D.N.Y. May 24, 2013)). "Whether such revision is appropriate in any given case is within the sound discretion of the trial judge." *Acha v. Beame*, 570 F.2d 57, 63 (2d Cir. 1978).

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 381 F. Supp. 3d 185, 209, n. 36 (N.D.N.Y. 2019), *aff'd*, 7 F.4th 50 (2d Cir. 2021). Here, the Court exercised its discretion and *sua sponte* reconsidered that much of the Prior Order addressed to whether Plaintiff had pled facts plausibly establishing sufficient racketeering predicate acts. The Court finds that its decision to do so was proper. Whether or not the Amended Complaint contained allegations materially different from the Complaint, and whether or not there was any intervening change of law, the Court had the inherent authority, prior to a final

order, to *sua sponte* reassess whether its prior legal determination applied to the allegations in the Amended Complaint even if those allegations are materially the same as in the Complaint. *See Utica Mut. Ins. Co.*, *supra.* This is so even if the Court did not specifically say that its prior determination was in error. Moreover, as evident by the Order, the Court found that its prior determination could not continue to apply. Defendants' motion for reconsideration in this regard is denied.

Next, Defendants argue that the Court erred in considering Plaintiff's allegations of having been the victim in a large-scale fraud scheme because "Plaintiff . . . simply *assumes* without evidence that there were 'thousands' of other cases like his own." Dkt, 56-6, at 3 (emphasis in original). This argument is without merit.

The allegations in the Amended Complaint can reasonably be read as asserting that Defendants Strumpf (an attorney and part owner of U.S. Equities) and Siegel (Strumpf's husband and part owner of U.S. Equities) concocted a scheme that allowed Defendant U.S. Equities to win uncontested default judgments by hiring process serving companies that regularly engaged in "sewer service." One such process serving company was Serves You Right, Inc. ("SYR") that was owned by Defendant Warshall. Plaintiff alleges that he was the victim of this scheme in the Kingston City Court. To show that the scheme existed, the Amended Complaint points to a July 21, 2010 New York state court Consent Order and Judgment that permanently enjoined Warshall and SYR from having any interest in any business involved in the service of legal process, required SYR to permanently cease any and all business activities and dissolve, required Warshall to surrender any license he had obtained as a process server, and required Warshall to pay a fine of $50,000. The Amended Complaint also points out that because Strumpf had

4

used SYR's services during the period covered by the state-court lawsuit, she entered into an "Assurance of Discontinuance" ("AOD") agreement with the New York State Attorney General. The AOD purportedly indicated that on a "persistent and repeated basis" during the relevant period, SYR had prepared false affidavits of service, that Strumpf had used SYR's services on approximately 4,020 occasions, and that Strumpf had obtained default judgments based on those false affidavits. Although the Amended Complaint acknowledges that the AOD did not indicate that Strumpf was aware that SYR's affidavits were false, it also alleges that in light of the fact that judgments had been obtained using false affidavits, Strumpf agreed to cooperate in identifying defendants in those cases to give them an opportunity to have the judgments vacated. While the Amended Complaint indicates that Plaintiff was never identified by Strumpf as a defendant in those cases and thus was never given an opportunity to have his default judgment vacated, the Amended Complaint asserts facts, including that U.S. Equities was the plaintiff in the Kingston City Court action, that Plaintiff was purportedly subjected to sewer service in that action, and that Warshall submitted a false affidavit of service, which plausibly establish that Plaintiff was one of the victims of the large fraudulent scheme that identified approximately 4,020 other victims.

      Although the AOD indicates that it "may not be used as evidence in any judicial or administrative hearing, proceeding or action except for a proceeding by the OAG to enforce its terms," and does not indicate that Strumpf was aware that SYR had filed false affidavits of service in any case, this document is probative of the allegation that a large-scale fraud scheme existed and that the Kingston City Court action was part of that scheme. As the Court indicated in the Order, Defendants can address through discovery

5

whether Plaintiff can establish that he was a victim of this large-scale fraud scheme and, if he was not, can move for summary judgment seeking to dismiss the RICO claims on this basis. *See* Order at 20-30.[1] Defendants' motion for reconsideration on this ground is denied.

Next, Defendants argue that "this Court erred in holding that the Amended Complaint plausibly alleged a civil RICO claim 'based on predicate acts that purportedly occurred thousands of times,' in other cases, 'pursuant to an expansive fraud scheme.'" Dkt. # 56-6 at 5 (quoting Order at 24, 25). Defendants asserts that "[f]ederal courts have repeatedly held that an individual plaintiff cannot, consistent with Fed. R. Civ. P. 9(b), rely upon allegations concerning other unnamed victims to plead a pattern of racketeering activity." *Id.* (citing, *inter alia*, *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 729 (7th Cir. 1998) ("[C]onclusory allegations that 'defendants' also defrauded unidentified 'others' are not enough to plead the requisite pattern of fraud."); *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 468 (2d Cir. 1995)("Plaintiff attempts to allege that the defendants' activities affected multiple victims… Nevertheless, plaintiff does not identify any other victims, nor state in anything but general terms the nature of their purported injuries.")). This argument fails to support reconsideration. As indicated above, Plaintiff

---

[1] ("While Plaintiff may not be able to establish that the alleged scheme existed, or that the Kingston City Court action was part of the scheme, or that, pursuant to this scheme, Defendants engaged in mail or wire fraud in cases other than the Kingston City Court action, for present purposes the Court concludes that Plaintiff has pled sufficient RICO predicate acts of mail and wire fraud to allow the RICO claim to proceed. Of course, if after discovery Plaintiff is unable to support his contention that the Kingston City Court action was part of the massive fraud scheme alleged in the Amended Complaint, Defendants are free to renew their challenge to Plaintiff's RICO claims based on the proposition set forth in *Kim* and addressed in the Court's September 24, 2019 Decision and Order. For present purposes, Defendants' motion on the ground that Plaintiff has failed to plead a pattern of racketeering activity involving at least two RICO predicate acts committed within a 10-year period is denied.")

plausibly alleges that he was the victim of a large-scale fraud scheme involving thousands of other victims potentially identifiable through the AOD that Strumpf entered. In this regard, Plaintiff does not rely on conclusory allegations that Defendants also defrauded unidentified others, but rather asserts that Defendants also potentially defrauded the 4020 individuals who were given the opportunity that have default judgments vacated after Strumpf entered the AOD.

There is also no merit to Defendants' contention that Plaintiff filed the Amended Complaint as "a pretext for discovery of unknown wrongs" in the hope "that discovery will unearth information tending to prove his contention of fraud" in violation of the one of the purposes of Rule 9(b). Def. Reply at 3 (quoting *Madonna v. U.S.*, 878 F.2d 62, 66 (2d Cir. 1989) (internal quotation marks and citation omitted)). As indicated, Plaintiff cites to what appears to be over 4000 specific instances of fraud, and discovery does not appear necessary to unearth "unknown" wrongs but rather to explore whether proof exists of the other wrongs to which Plaintiff cites.

Furthermore, in addressing Rule 9(b), the Court stated in the Order:

Plaintiff has also plausibly alleged facts satisfying Federal Rule of Civil Procedure 9(b).

> While the heightened pleading requirement of Rule 9(b) applies to fraud allegations, the specificity required under Federal Rule of Civil Procedure 9(b) changes with the nature of the fraud allegations. Where the allegations focus on "specific statements or mailings [that] were themselves fraudulent, the complaint should specify the fraud involved, identify the parties responsible for the fraud, and state where and when the fraud occurred." *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, No. 04-CV-2934 (ERK), 2005 WL 3710370, at *11 (E.D.N.Y. Feb. 22, 2005). In contrast, "in cases in which the mail [or wires were] simply used in furtherance of a master plan to defraud ... and a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to

7

> satisfy Rule 9(b)." *Id.* This is because courts "do not regard mailings [or wire communications] in furtherance of the scheme, but which are not themselves false or misleading, as 'averments of fraud' within the language of Rule 9(b)." *Spira v. Nick*, 876 F. Supp. 553, 559 (S.D.N.Y. 1995); *see also Sanchez v. ASA Coll., Inc.*, No. 14-CV-5006 (JMF), 2015 WL 3540836, at *6 (S.D.N.Y. June 5, 2015).
>
> *Capital 7 Funding*, 2020 WL 2836757, at *12.
>
> Plaintiff alleges that Defendants used the mail and wires in furtherance of a master plan to defraud, and he provides a detailed description of the underlying scheme and its connection with the use of the mail and/or wires. Further, Plaintiff specifically identifies fraudulent mail acts in connection with the Kingston City Court action, *see* Am. Compl. ¶¶ 58, 59(a)-(c), and alleges Defendants used the mail and the wires to file similar documents in other cases brought pursuant to this scheme. *See id.* ¶ 59. This satisfies Rule 9(b). *See Capital 7 Funding*, 2020 WL 2836757, at *12.

Ord. at 27-28; *see also In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998)("In complex civil RICO actions involving multiple defendants ... Rule 9(b) does not require that the temporal geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity. In such cases, Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.")(internal citation and footnote omitted); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 149 (S.D.N.Y. 2014) ("[I]n the context of a RICO action, the complaint need not be specific as to each allegation of mail or wire fraud when the nature of the RICO scheme is sufficiently pleaded so as to give notice to the defendants. Instead, it need allege only that each defendant directly participated in the scheme and could reasonably foresee that the mails would be used in furtherance of the same.")(internal quotation marks and citations omitted).

Defendants fail to establish the need to correct a clear error of law in order to

8

prevent manifest injustice. Defendants can explore through discovery whether Plaintiff can establish the identity of other victims of the alleged large-scale fraud scheme and, if not, can move for summary judgment seeking to dismiss the RICO claims on this basis. For present purposes, Defendants' motion for reconsideration on this ground is denied.

### b. Plaintiff's Motion

Plaintiff's motion for reconsideration lacks substantive merit.[2] Plaintiff argues that the Court should reconsider its decision to grant Defendants' motion to dismiss the Seventh Cause of Action titled "Theft by Fraudulent Conversion." *See* Order at 34. There, the Court held that "[i]nasmuch as this claim is predicated on Plaintiff's unsuccessful motion to vacate the Kingston City Court default judgment, *see* Dkt. # 50, Plaintiff fails to allege a plausible claim for conversion that is not barred by the *Rooker-Feldman* doctrine." *Id.* Plaintiff argues that the Court should grant his motion for reconsideration because:

> [i]n his Amended Complaint, Plaintiff inadvertently combined a seventh cause of action for Theft by Fraudulent Conversion with an announcement that he would be submitting an order to show cause along with this complaint, seeking vacatur of the default judgment of the Kingston City Court. By striking "*Plaintiff is submitting an order to show cause along with this complaint, seeking vacatur of the default judgment of the Kingston City Court, dismissal of that action, and return of all money seized from plaintiff's Navy Federal Credit Union account*.", Plaintiff is no longer in violation of Rooker-Feldman.

Dkt. # 58-1 at CM/ECF p. 3 (emphasis in original).

A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking 'a

---

[2] In a December 11, 2020 Text Order, Dkt. # 55, the Court granted a request for an extension of time to file motions for reconsideration, and indicated that "[a]ny motion for reconsideration should be filed on or before 1/4/2021." Plaintiff filed his motion for reconsideration on January 25, 2021, *see* Dkt. # 58, which makes it late under the December 11, 2020 Text Order. Nevertheless, the Court proceeds to determine whether the motion has substantive merit.

9

second bite at the apple[.]'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 41 (2d Cir. 2012)(quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). This is exactly what Plaintiff attempts to do here. Furthermore, a motion for reconsideration is not a proper vehicle to amend a pleading. *See* Fed. R. Civ. P. 15(a). Plaintiff fails to establish (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct clear error of law to prevent manifest injustice. Thus, Plaintiff's motion for reconsideration is denied.

### IV.     CONCLUSION

For the reasons discussed above, Defendants' motion for reconsideration, Dkt. # 56, is **DENIED**, and Plaintiff's motion for reconsideration, Dkt. # 58, is **DENIED**.

**IT IS SO ORDERED.**

Dated:  September 30, 2021

Thomas J. McAvoy
Senior, U.S. District Judge