UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT CARROLL,

                                    Plaintiff,

-against-                                                        1:18-CV-667 (LEK/CFH)

U.S. EQUITIES CORP., *et al.*,

                                    Defendants.

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        After commencing this action *pro se* on June 7, 2018, Dkt. No. 1 ("Complaint"), Plaintiff

Robert Carroll filed a Second Amended Complaint against *inter alia* Defendants U.S. Equities

Corp. ("U.S. Equities"), Linda Strumpf ("Strumpf"), and Hal Siegel ("Siegel") (collectively

"Defendants") asserting claims related to the procurement and enforcement of a default

judgment, Dkt. No. 76 ("Second Amended Complaint" or "SAC"). Pending before the Court are

Plaintiff's and Defendants' cross-motions for summary judgment, Dkt. No. 89 at 9–34

("Plaintiff's Motion"), Dkt. No. 90-3 ("Defendants' Motion"). Both Plaintiff and Defendants

attached statements of material facts. Dkt. No. 89 at 6–8 ("Plaintiff's Statement of Material

Facts" or "PSMF"), Dkt. No. 90-2 ("Defendants' Statement of Material Facts" or "DSMF").

Plaintiff and Defendants both filed responses to the Motions. Dkt. No. 101 at 1–33 ("Plaintiff's

Response"); Dkt. No. 104 ("Defendants' Response"). Defendants filed a response to Plaintiff's

Statement of Material Facts. Dkt. No. 104-1 ("Response to Plaintiff's Statement of Material

Facts" or "RPSMF"). Plaintiff did not file a response to Defendants' Statement of Material Facts.

Plaintiff and Defendants also filed reply briefs. Dkt. No. 108; Dkt. No. 109.

For the reasons that follow, Plaintiff's Motion is denied, and Defendants' Motion is granted in part and denied in part.

## II.     BACKGROUND

### A.  Statements of Material Facts

The Court assumes familiarity with the procedural posture of this case as detailed in prior orders. See Dkt. Nos. 22, 50, 53, 61. The summary of the factual history of this case is drawn from Defendants' Statement of Material Facts, Plaintiff's Statement of Material Facts, and the Response to Plaintiff's Statement of Material Facts. Disputes among the parties with respect to factual record are noted below.

#### 1.  Procurement of the Judgment

Until around December 2002, Plaintiff resided at 2733 Route 209 in Kingston, Ulster County, New York. See DSMF ¶¶ 3–4. During that time, Plaintiff worked both for his brother and his own business. See id. ¶¶ 2, 6. Plaintiff obtained credit card debt during that time, including from a card issued by MBNA America Bank N.A. ("MBNA"). See id. ¶¶ 8–9. Starting in 2003 or 2004, Plaintiff maintained a mailing address at P.O. Box 201, Connelly, New York 12417 ("P.O. Box"). See id. ¶ 10. Since at least 2013, Carroll has resided at 10 Vinegar Hill Road, West Hurley, New York 12491. See id. ¶ 12.

Strumpf, an attorney and sole practitioner with an office in New York, has represented U.S. Equities in numerous transactions. See id. ¶¶ 14–15, 18. In January 2007, U.S. Equities, represented by Strumpf, purchased the rights to Plaintiff's MBNA credit card debt ("Debt"), which had a principal balance of $11,424.67. See id. ¶¶ 27–28. Strumpf's office obtained a report from LexisNexis' Accurint service ("Accurint Report"), which showed the P.O. Box, 2733 Route 209, and 10 Vinegar Hill as possible addresses for Plaintiff. See id. ¶¶ 33–34.

On April 27, 2007, Strumpf's office mailed a letter to Plaintiff's P.O. Box informing Plaintiff, among other things, that U.S. Equities had acquired the Debt, and that Strumpf and U.S. Equities would treat the Debt as valid unless Plaintiff disputed its validity within thirty days of receiving the letter. See id. ¶ 29. Plaintiff did not respond. On February 14, 2008, Strumpf filed an action to collect the Debt in the City Court of Kingston ("Collection Action"), using Plaintiff's 2733 Route 209 address, which sits in Ulster County. See id. ¶¶ 30, 33–36. Strumpf's office retained Serves You Right, Inc. ("SYR") to serve summons and complaint on Plaintiff. See id. ¶ 37. In early June 2008, SYR provided Strumpf's office with an affidavit of service attesting to proper service on Plaintiff at 2733 Route 209 ("Affidavit of Service"). See id. ¶ 41. Strumpf did not instruct SYR to falsify the Affidavit of Service and "had no reason to doubt that it was accurate at that time." Id. ¶¶ 40, 42. Strumpf also personally mailed additional copies of the summons and complaint to 2733 Route 209. See id. at ¶ 43. The mailing "was not returned as undeliverable." Id. ¶ 44.

Plaintiff did not serve an answer in the Collection Action, and the Kingston City Court awarded U.S. Equities a default judgment of $28,681.97 against Plaintiff ("Judgment"). See id. ¶¶ 45–46. On October 1, 2009, Strumpf "directed her staff to obtain a transcript of the Judgment from the Kingston City Court and to file same with the Ulster County Clerk." Id. ¶ 47. According to Defendants, "[t]he precise steps for [obtaining and filing a transcript of judgment] were set forth in an office manual ['Manual'] prepared by Strumpf, which contained a variety of detailed procedures designed to ensure compliance with federal and state law, including the Fair Debt Collection Practices Act and Article 52 of the New York Civil Practice Law and Rules ['CPLR']." Id. ¶ 48. Strumpf's office received a transcript of the Judgment from the Kingston City Court ("Transcript of Judgment"), and, "[p]er the Manual, the employee who received the

Transcript of Judgment from the Kingston City Court should have scanned in a copy and then mailed the original to the Ulster County Clerk." Id. ¶ 52. Instead, one of Strumpf's employees made an entry in a notes log for the Collection Action stating, "trans filed on 10/21/09." Id. ¶ 53. According to Defendants, "this entry appears to be erroneous in that Defendants have been unable to independently confirm during the course of this action that the Transcript of Judgment was actually filed with the Ulster County Clerk." Id. ¶ 54.

In the years that followed, Strumpf's office sent multiple letters to Plaintiff's P.O. Box: a letter entitled "U.S. Equities Corp. v. Robert Bruce Carroll," informing Plaintiff that a judgment had been entered against him in the sum of $28,681.97 sent on September 29, 2009, see id. ¶ 56; a letter with the same title enclosing an information subpoena concerning the Judgment ("Subpoena") sent on December 16, 2009, see id. ¶¶ 59–60; three letters stating that the Judgment had been entered against Plaintiff dated June 10, 2010, March 21, 2011, and March 21, 2013, see id. ¶¶ 63, 66, 69; and two letters asking Plaintiff to contact Strumpf's office dated May 8, 2014, and March 25, 2015, see id. ¶¶ 76, 79. Plaintiff admitted that he may have received these letters and discarded them. See id. ¶¶ 31, 58, 62, 65, 68, 71, 78, 81. Additionally, Strumpf's office informed JPMorgan Chase Bank, N.A. ("Chase") of the Subpoena and a restraining notice, and on March 26, 2014, Chase sent a letter to Plaintiff's 10 Vinegar Hill Road address, enclosing complete copies of the Subpoena, restraining notice, and exemption claim forms served by Strumpf ("Exemption Claim Forms"). See id. ¶¶ 72–74.

### 2.   Assurance of Discontinuance

On April 29, 2011, approximately a year and a half after the entry of the Judgment, Strumpf entered into an "Assurance of Discontinuance" with the Office of the New York State Attorney General ("OAG") concerning certain default judgments procured on the basis of SYR

affidavits of service. See id. ¶ 106; Dkt. No. 90-43 ("Assurance of Discontinuance" or "AOD").

In the Assurance of Discontinuance, the OAG found that "[o]n a repeated and persistent basis, in

support of her motions for default judgments, Strumpf submitted affidavits of service prepared

by SYR in which the process server falsified service attempts." AOD ¶ 20. However, "[t]he

OAG d[id] not make the finding that Strumpf was aware that SYR had falsified affidavits of

service," and the Assurance of Discontinuance "d[id] not constitute a finding by the OAG of any

wrongdoing or liability on the part of Strumpf." Id. The OAG then provided Strumpf with a list

of actions with which Strumpf could identify affected defendants to provide them notice and an

opportunity to vacate the judgments against them. See DSMF ¶ 109. The Collection Action

against Plaintiff was not included in the OAG's list. See id. ¶ 110.

Plaintiff asserts that David Warshall, the owner of SYR who purportedly served Plaintiff

in the Collection Action, was under OAG investigation between January 2007 and September

2009. See PSMF ¶¶ 9–10; but see RPSMF ¶¶ 9–10 (disputing). According to Plaintiff, Warshall

was eventually fined $50,000 and "forced to surrender his license as a process server," and SYR

was dissolved. PSMF ¶ 11; but see RPSMF ¶ 11 (disputing that Warshall was "forced" to

surrender his license).

### 3.  Execution of the Judgment

On May 31, 2017, Strumpf's office served the Subpoena with a restraining notice and

Exemption Claim Forms on Navy Federal Credit Union ("NFCU"), where Plaintiff maintains an

account. See DSMF ¶ 92. Earlier that month, Plaintiff deposited into his NFCU account a check

for $252,030.76, which he received as a result of a damages award in a medical malpractice

action against the United States government. See id. ¶¶ 82–83, 91. In addition to the malpractice

action, Plaintiff applied to the Veterans Administration ("VA") for benefits pursuant to 38

U.S.C. § 1151 based on the injuries asserted in the malpractice action, but the VA denied the application. See id. ¶¶ 85, 88.

On June 27, 2017, NFCU served Strumpf with a response to the Subpoena, advising that it had restrained $50,181.65 in Plaintiff's account. See id. ¶ 94. Strumpf then checked the notes log for the Collection Action to confirm that the Transcript of Judgment had been filed with the Ulster County Clerk. See id. ¶ 96. Based on the entry, "trans filed on 10/21/09," Strumpf "assumed that the Transcript of Judgment had been filed with the Ulster County Clerk on October 21, 2009." Id. ¶ 97. Strumpf then issued an execution to the Nassau County Sheriff Office requesting levy on Plaintiff's NFCU account. See id. ¶ 98. On July 21, 2017, NFCU withdrew $50,181.65 from Plaintiff's account and issued a check in that amount to the Nassau County Sheriff. See id. ¶¶ 98–99.

Plaintiff asserts that he was not notified of the restraining notice until he saw that the balance in his NFCU account decreased by over $52,000. See PSMF ¶ 3; but see RPSMF ¶ 3 (disputing).

On August 10, 2017, Plaintiff filed a proposed order both to show cause to vacate the Judgment with the Kingston City Court ("Order to Show Cause") and to enjoin the Nassau County Sheriff from releasing the withdrawn funds to U.S. Equities. See DSMF ¶ 100. Plaintiff's Order to Show Cause was denied, and Plaintiff "called [D]efendants' office and spoke with John Murphy who tried to coerce [P]laintiff to make payments on [the Debt]." PSMF ¶ 6; but see RPSMF ¶ 6 (disputing); see also DSMF ¶ 102 (acknowledging Plaintiff spoke with someone at Strumpf's office). On August 22, 2017, Plaintiff sent Strumpf's office "a series of emails threatening legal action." Id. ¶ 104. On August 23, 2017, the Nassau County Sheriff's Office

issued Strumpf a check in the amount of $47,779.06, and Strumpf issued a satisfaction of judgment on behalf of U.S. Equities. See id. ¶ 105.

### B.  Second Amended Complaint

In the Second Amended Complaint, Plaintiff alleges that Defendants violated federal and state law in connection with the procurement and enforcement of the Judgment. See SAC at 8–19. Plaintiff asserts that Defendants' actions were part of a larger scheme used against himself and others to fraudulently obtain default judgments. See id. ¶ 2. In this scheme, U.S. Equities, a debt collection agency, purportedly purchased, for "pennies on the dollar," often uncollectable portfolios of alleged consumer debts. Id. ¶¶ 17, 9. This scheme purportedly involved hiring process serving companies like SYR that regularly engaged in "sewer service," the practice of failing to serve a summons and complaint while generating a fraudulent affidavit attesting to proper service. See id. ¶¶ 22–25. These fraudulent affidavits of service, along with false affidavits of merit, were then allegedly filed in local and state courts to fraudulently obtain judgments used to extract money from the victims. See id. ¶¶ 21, 23. Plaintiff maintains that the Judgment was part of this scheme. See id. ¶ 30.

In support of his contention that this scheme existed, Plaintiff points to an investigation conducted from January 2007 to September 2009 by the OAG against SYR and Warshall. See id. ¶¶ 39–40. The OAG investigated the fraudulent activities of SYR during the period from January 1, 2007 to September 30, 2009. See id. ¶ 39. The investigation ended by permanently enjoining SYR from having any interest in any business involved in the service of legal process, and Strumpf entered into the Assurance of Discontinuance. See id. ¶ 41; AOD.

The operative claims in the SAC fall into two categories: (1) claims relating to the procurement of the Judgment from 2008 to 2010; and (2) claims relating to the enforcement of

the Judgment from 2017 to 2018. See generally SAC. Plaintiff asserts violations of the Fair Debt

Collection Practices Act ("FDCPA"), see id. ¶¶ 45–49; the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), see id. ¶¶ 50–72; New York General Business Law § 349 ("GBL §

349"), see id. ¶¶ 73–77; New York Judiciary Law § 487, see id. ¶¶ 78 –87; and New York

common law fraud, see id., 100–105.

## III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary

judgment if "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the

outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, "[f]actual disputes that are irrelevant or

unnecessary" will not preclude summary judgment. Id.; see also Taggart v. Time Inc., 924 F.2d

43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the

nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis

for the motion and identifying those portions of the record that the moving party claims will

demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its

initial burden, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986). The nonmoving party may not rely on "mere conclusory allegations,

speculation or conjecture," <u>Fischer v. Forrest</u>, 968 F.3d 216, 221 (2d Cir. 2020) (quoting <u>Cifarelli v. Village of Babylon</u>, 93 F.3d 47, 51 (2d Cir. 1996), and must present more than a mere "scintilla of evidence" supporting its claims, <u>Anderson</u>, 477 U.S. at 252. At the same time, a court must resolve all ambiguities, "draw all reasonable inferences in favor of the nonmoving party," <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S 133, 150 (2000), and "eschew credibility assessments," <u>Amnesty Am. v. Town of West Hartford</u>, 361 F.3d 113, 122 (2d Cir. 2004) (quoting <u>Weyant v. Okst</u>, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

The Local Rules require a party moving for summary judgment to submit a "Statement of Material Facts" which sets forth, with specific citations to the record, each material fact about which the moving party contends there exists no genuine issue. <u>See</u> L.R. 56.1(a). "[T]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003); <u>see also</u> <u>Martinaj v. Uhler</u>, No. 18-CV-257, 2021 WL 3793769, at *8 (N.D.N.Y. Aug. 26, 2021) ("[A]s a threshold matter, the Court cannot consider factual assertions made in a memorandum of law that are unsupported by evidence in the record. Arguments in a brief are not evidence.").

## IV.   DISCUSSION

### A.  Defendants' Motion

Defendants contend that all claims relating to the procurement of the Judgment—which includes all claims except the FDCPA claims relating to the enforcement of the Judgment in 2017—are time-barred. See Defs.' Mot. at 7–10. The remaining FDCPA claims, according to Defendants, are legally deficient. See id. at 10–17.

#### 1.  Defendants' Statement of Material Facts

As an initial matter, Plaintiff submitted no response to Defendants' Statement of Material Facts. See generally Pl.'s Resp. Under Local Rule 56.1(b), once a party submits a properly supported statement of material facts, the party opposing the motion shall "file a separate Response to the Statement of Material Facts" which "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs." "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." L.R. 56.1(b) (emphasis in original).

The responding statement of material facts is not a mere formality, and courts apply this rule strictly. See N.Y. Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648–49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [the movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations"); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (accepting as true material facts contained in unopposed statement of material facts); Meaney v. CHS Acquisition Corp.,

103 F. Supp. 2d 104, 108–109 (N.D.N.Y. 2000) (Kahn, J.) (deeming movant's statement of material facts admitted where non-movant's response "set forth *no* citations—specific or otherwise—to the record"); <u>McKnight v. Dormitory Auth. of State of N.Y.</u>, 189 F.R.D. 225, 227 (N.D.N.Y. 1999) (deeming the portions of the defendants' statement of material facts "that are not specifically controverted by [the p]laintiff to be admitted").

"[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment." <u>Viscusi v. Proctor & Gamble</u>, No. 05-CV-1528, 2007 WL 2071546, at *9 (E.D.N.Y. July 16, 2007); <u>see also</u> <u>Faretta v. California</u>, 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."). Thus, while the Court must construe a *pro se* litigant's pleadings and papers liberally and interpret them to raise the strongest arguments that they suggest, the application of this lenient standard does not relieve a *pro se* litigant of the requirement to follow the procedural formalities of the Local Rules. <u>See</u> <u>Edwards v. I.N.S.</u>, 59 F.3d 5, 8 (2d Cir. 1995) ("While a *pro se* litigant's pleadings must be construed liberally . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.") (internal citations omitted); <u>Govan v. Campbell</u>, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (deeming movant's statement of material facts admitted when non-movant, proceeding *pro se*, did not file a response statement of material facts).

Plaintiff did not file a response to Defendants' Statement of Material Facts. Therefore, the Court will deem properly supported facts stated in Defendants' Statement of Material Facts as true for the purposes of Defendants' Motion. <u>See</u> <u>N.Y. Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.</u>, 426 F.3d at 648–49. The Court additionally notes that, although this rule is applied strictly regardless of a party's *pro se* status, Plaintiff is aware of the consequences of

omitting to file a response to a statement of material facts. Plaintiff was served with a standard form titled "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion," which clarifies that Plaintiff must submit a response to Defendants' Statement of Material Facts and that failure to do so may result in the Court "deem[ing] you to have admitted the defendants' factual statements." Dkt. No. 90-1. Plaintiff also included a statement of material facts with his own summary judgment motion. See PSMF. Moreover, Plaintiff is proceeding *pro se* in other actions pending in the Northern District of New York where he filed a response to that defendant's statement of material facts. See Carroll v. United States, No. 19-CV-1230, Dkt. No. 57-1; see also id. Dkt. No. 57 ¶ 7 (quoting Local Rule 56.1 to argue that the defendant "failed to submit a proper response to [P]laintiff's statement of material facts").

2. *Statute of limitations*

a. FDCPA Claims

Defendants argue that Plaintiff's FDCPA claims relating to the procurement of the Judgment—that Defendant "ma[de] false and deceptive representations in the affidavits of service and merit presented to the Kingston City Court, and obtain[ed] a default judgment based on those false documentations and representations," SAC ¶ 49(a)—are time-barred. See Defs.' Mot. at 7–8. FDCPA claims are subject to a one-year statute of limitations that begins to run on the date the alleged violation actually "occurs," not the date on which the violation is discovered. 15 U.S.C. § 1692k(d). Here, Plaintiff filed suit on June 7, 2018. See Compl. Thus, only alleged FDCPA violations that accrued on or after June 7, 2017 are timely, absent some reason to assign a different accrual date or to toll the running of the statute of limitations. Defendants argue there is no reason to toll the statute of limitations or assign a different accrual date because Plaintiff received repeated notices concerning the Judgment before 2017. See Defs.' Mot. at 7. However,

Plaintiff argues that he never received the notices, and that the statute of limitations does not bar his FDCPA claim due to the continuing violation doctrine and Defendants' fraudulent concealment. See Pl.'s Resp. at 10–12.

### i.   Notice of Defendants' Collection Efforts

Defendants first argue that "[n]early all of [Plaintiff's] claims depend on the allegation that he was unaware of the Judgment and Defendants' collection efforts until his NFCU account was restrained on June 20, 2017." See Defs.' Mot. at 2 (citing SAC ¶ 30). However, since Defendants mailed several notices to Plaintiff informing him of the Judgment, Defendants contend that Plaintiff is presumed to have received notice based on the "mailbox rule." Id. at 2.

"Under the mailbox rule, proof of an office procedure followed in the regular course of business which establishes that a notice was properly addressed and mailed gives rise to a rebuttable presumption that the notice was actually received by the person to whom it was addressed." Tarnarider v. 21st Century Ins. & Fin. Servs., Inc., No. 18-CV-1882, 2018 WL 3339524, at *2 (E.D.N.Y. Jul. 6, 2018) (citing Leon v. Murphy, 988 F.2d 303, 309 (2d Cir. 1993)). "Under New York law, only personal knowledge of mailing procedures is required to establish the regular office procedure, not personal knowledge of the particular mailing." Id. (quoting Leon, 988 F.2d at 309). "Once the mailbox rule presumption arises[,] a party's mere allegation that it did not receive the letter or notice does not rebut the presumption. 'There must be—in addition to denial of receipt—some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable.'" Id. (quoting Leon, 988 F.2d at 309).

In addition to Defendants' Statement of Material Facts, which details numerous letters sent to Plaintiff regarding the underlying Collections Action, see DSMF ¶¶ 29–31, 56–71, 76–81,

Defendants produced copies of the letters from Strumpf's office addressed to the P.O. Box, see Dkt. Nos. 90-13, 90-22–90-26, 90-28, 90-29. At his deposition, Plaintiff testified that he did not recall receiving the letters, but that if he received them, he may have thrown each item in the trash because he thought they were part of a scam. See Dkt. No. 90-8 ("Carroll Deposition") at 149:20–151:15; 153:7–154:13; DSMF ¶¶ 58–81; Pl.'s Resp. at 4 ("Plaintiff admits that he may have thrown out the notices from Strumpf."). Plaintiff also implies that he may not have received the letter and enclosures from Chase dated March 26, 2014, because he was allegedly attempting to evict a tenant from 10 Vinegar Hill at the time. See Pl.'s Resp. at 4. However, the transcript excerpts Plaintiff cites for this proposition are dated October and December 2013, and do not mention the property address at issue. See Dkt. No. 101 at 36–37. Moreover, since Plaintiff does not respond to Defendants' Statement of Material Facts, Plaintiff's receipt of the correspondence from Chase remains undisputed on this record. See DSMF ¶¶ 12–13, 75.

Nevertheless, Plaintiff cites Puglisi v. Debt Recovery Sols., LLC, 822 F. Supp. 2d 218, 226–27 (E.D.N.Y. 2011), to argue that Strumpf's office procedures failed to constitute a "reasonable precaution" because "[D]efendants have not provided affidavits as to the regular office procedures followed," that their "procedures are inadequate and that Strumpf failed to supervise her staff." Pl.'s Resp. at 1–2. In Puglisi, the court stated that "when attempting to show that he is entitled to the bona fide error defense, a debt collector need not demonstrate that its procedures for avoiding [FDCPA] violations are fool proof, but rather, must only show that its procedures constitute a reasonable precaution." 822 F. Supp. 2d at 226–27 (internal quotation marks omitted).

Contrary to Plaintiff's contentions, Defendants submitted Strumpf's Declaration that describes the pertinent office procedures and the way they were used relative to the Collection

Action. See Dkt. No. 90-5 ("Strumpf Declaration") ¶¶ 6–14. The alleged errors in Strumpf's procedures, including whether Strumpf identified Plaintiff's last known address, do not demonstrate that Strumpf or her employees failed to follow her procedures for mailing these documents in the regular course of business, or that in following these procedures she failed to mail the subject notices to Plaintiff at a proper address. See Hyman v. Tate, 362 F.3d 965, 968 (7th Cir. 2004) (holding that the debt collector "was not required to independently research each account . . . before sending collection letters" and that its procedures were reasonable even when "[m]istakes can occasionally happen"). Accordingly, the Court applies the mailbox rule to the letters and correspondence sent by Strumpf and Chase to Plaintiff. Therefore, Plaintiff is deemed to have received the eight letters regarding the Judgment. See supra Section II.A.1.

### ii.   Continuing Violation Doctrine

Plaintiff also argues that his FDCPA claims are saved by the "continuing violation" doctrine—that "the course of the lawsuit constituted a continuing wrong that will not be completed until the date of the dismissal." Pl.'s Resp. at 10.

"Where a plaintiff alleges multiple violations of the FDCPA, some occurring before and others occurring after the statute of limitations has expired, a court must determine if the non-time-barred allegations are new and independent FDCPA violations." Lewis v. Legal Servicing, LLC, No. 19-CV-8085, 2022 WL 2531817, at *8 (S.D.N.Y. Mar. 15, 2022), report and recommendation adopted sub nom. Lewis v. Steward, No. 19-CV-8085, 2022 WL 4592641 (S.D.N.Y. Sept. 30, 2022) (internal quotation marks omitted).

Here, the attempt to collect the debt through enforcement of the Judgment against Plaintiff's NFCU bank account in 2017, which is the earliest act within the FDCPA's one-year limitations period, was a "distinct act, in time and in terms of the nature of the alleged

15

[conduct]," from the procurement of the Judgment almost a decade earlier. Eades v. Kennedy, PC Law Offices, No. 12-CV-6680, 2016 WL 11626636, at *2 (W.D.N.Y. Jun. 28, 2016) (finding the defendant's "most recent attempt to collect the debt" was a discrete act and did not constitute a continuing violation). Accordingly, the continuing violation doctrine does not save Plaintiff's pre-Judgment FDCPA claims.

### iii.   Fraudulent Concealment

Plaintiff next argues that his FDCPA claims regarding the procurement of the Judgment are preserved through "fraudulent concealment," because Defendants "concealed, inter alia, that the default judgment was based on sewer service by SYR and also that Strumpf was aware that 100 First Street was actually [Plaintiff's] last known address." Pl.'s Resp. at 11. The Court finds that Plaintiff cannot establish that Defendants concealed the existence of his cause of action.

Tolling of the statute of limitations for fraudulent concealment requires a plaintiff to establish that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." Koch v. Christie's Int'l PLC, 699 F.3d 141, 157 (2d Cir. 2012) (internal quotation marks omitted). "A statute of limitations may be equitably tolled as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights, that is, in a situation where a plaintiff could show that it would have been impossible for a reasonably prudent person to learn about his or her cause of action." DeSuze v. Ammon, 990 F.3d 264, 271 (2d Cir. 2021) (cleaned up).

Plaintiff argues that Strumpf was aware that "100 First Street" was Plaintiff's actual address until May 2008. See Pl.'s Resp. at 11. However, service was executed in June 2008, after

Plaintiff allegedly stopped residing at that address. See DSMF ¶ 41. Moreover, according to the undisputed facts, the Accurint Report did not list 100 First Street when Strumpf's office searched in January 2008. See id. ¶ 34. Accordingly, the Court cannot conclude that Strumpf had knowledge of Plaintiff's 100 First Street residence at the time of service.

Additionally, Plaintiff's argument that Defendants were aware of the sewer service is based upon speculation. Plaintiff contends that Strumpf must have been aware of this fact because Strumpf used SYR on numerous occasions, the OAG entered into an Assurance of Discontinuance with Strumpf requiring her to identify cases where SYR used sewer service, and that Strumpf's representations lack credibility. See Pl.'s Resp. at 6–9. To the contrary, the undisputed facts do not show that Strumpf was aware whether SYR engaged in sewer service in this case, see DSMF ¶¶ 40–44, and the Assurance of Discontinuance did not include Plaintiff on the list of impacted individuals, see id. ¶ 110. In terms of Strumpf's credibility, Plaintiff contends that Strumpf was aware that the statute of limitations "would expire soon" because "she had already calculated interest due from the last payment on 3/28/2002 to January 14, 2009." Pl.'s Resp. at 7. But the basis for this proposition is Strumpf's post-Judgment calculation of interest, which provides no indication that Strumpf was aware that the statute of limitations had expired at the time of attempted service.

Tolling the statute of limitations under the theory of fraudulent concealment is further inappropriate because Strumpf sent Plaintiff repeated notices concerning the Judgment, which Plaintiff received. See DSMF ¶¶ 56–71, 76–81. While Plaintiff offers a number of reasons why he might have disregarded the notices sent to him about the Collection Action—such as that he did not live in the City of Kingston, the statute of limitations on the debt collection action had expired, that the amount of the judgment was in excess of the jurisdictional limit for claims in

City Court, and that some documents did not have sufficient specifics of the underlying action, see Pl.'s Resp. at 4–5—the notices, at the very least, would have alerted a reasonably prudent person to inquire about the substance of the claims made years before he commenced this action. Even if the representations in the various documents were insufficient to put Plaintiff on notice of an underlying judgment against him in Kingston City Court, they certainly did not make it "impossible" for Plaintiff to learn of the facts underlying his FDCPA claims. DeSuze, 990 F.3d at 271 (emphasis omitted). Accordingly, Plaintiff has not established that tolling on the basis of fraudulent concealment is appropriate in this case.

### iv.   Equitable Estoppel

Plaintiff also argues that "[e]quitable estoppel applies since [D]efendants used fraud to dissuade [Plaintiff] from going to court and attempted to harass him into making payments instead, in an effort to revive the statute of limitations." Pl.'s Resp. at 12. This argument is without merit because any conversation Plaintiff had with Defendants was years after the alleged violation occurred. See DSMF ¶ 102.

In conclusion, the Court finds that Plaintiff's FDCPA claims based on the alleged "making [of] false and deceptive representations in the affidavits of service and merit presented to the Kingston City Court, and obtaining a default judgment based on those false documentations and representations," SAC ¶ 49(a), are time-barred.

### b.   RICO Claims

Defendants argue that Plaintiff's cause of action for RICO and RICO conspiracy is also time-barred. See Defs.' Mot. at 8–9. "The statute of limitations for a civil RICO claim is four years." Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 361 (2d Cir. 2013); see also World Wrestling Ent., Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 530 (S.D.N.Y. 2007), aff'd, 328 F.

App'x 695 (2d Cir. 2009) ("[T]he statute of limitations analysis for civil RICO conspiracy claims is the same as that for civil RICO claims brought under the substantive RICO provision.") (cleaned up). The limitations period begins to run "when the plaintiff discovers or should have discovered the RICO injury." Cohen, 711 F.3d at 361 (quoting In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d Cir. 1998)). "The first step in the statute of limitations analysis is to determine when the [plaintiff] sustained the alleged injury for which they seek redress. We then determine when they discovered or should have discovered the injury and begin the four-year statute of limitations period at that point." In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d at 59 (internal citation omitted). "An injury is discoverable when a plaintiff has constructive notice of facts sufficient to create a duty to investigate further into the matter. . . . In essence, knowledge of the fraud will be imputed to a plaintiff if there are circumstances sufficient to alert a reasonable person to the probability that he or she has been defrauded." World Wrestling Entm't, 530 F. Supp. 2d at 525 (internal quotation marks omitted).

Defendants argue that Plaintiff's alleged RICO injury is the Judgment, "which was entered against him on February 2, 2009, and which he became aware of in September or October 2009, at the latest." Defs.' Mot. at 8. Therefore, Defendants argue, the RICO claims are time-barred. See id. In opposition, Plaintiff argues that his RICO claims are timely because he did not suffer a cognizable RICO injury until his NFCU bank account was restrained and executed upon in 2017. See Pl.'s Resp. at 12–13.

The Court finds that Plaintiff's injury is the Judgment. See Chevron Corp. v. Donziger, 833 F.3d 74, 135 (2d Cir. 2016) ("The imposition of a wrongful debt constitutes an injury to one's business or property."). For the reasons discussed above, Plaintiff knew or should have known of the Judgment no later than 2009, and tolling is not warranted. See *supra* Section

IV.A.2.a. Accordingly, Plaintiff's RICO claims, including the RICO conspiracy claims, are time-barred.

### c.   GBL § 349 Claims

Defendants argue that Plaintiff's claims under GBL § 349 are similarly time-barred. See Defs.' Mot. at 9. Plaintiff contends that these claims are timely due to fraudulent concealment. See Pl.'s Resp. at 16–17. The Court finds Plaintiff's argument is without merit.

Claims under GBL § 349 are subject to a "three-year statute of limitations." Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 459 (S.D.N.Y. 2014). In order to toll the statute of limitations due to fraudulent concealment under New York law, "[a] plaintiff must establish that 'the defendant wrongfully concealed material facts,' which 'prevented plaintiff's discovery of the nature of the claim,' and that 'plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.'" Id. at 462 (quoting Koch v. Christie's Int'l PLC, 699 F.3d 141, 157 (2d Cir. 2012)). As with Plaintiff's FDCPA claims, his GBL § 349 claims are time-barred with respect to the procurement of the Judgment. The undisputed facts do not show that Defendants "wrongfully concealed material facts" but instead show that Defendants sent Plaintiff repeated notices of the Judgment, including the Subpoena bearing the full case caption for the Collection Action. See DSMF ¶¶ 57–81. Plaintiff also cannot establish he "exercised due diligence in pursuing the discovery of the claim," Marshall, 51 F. Supp. 3d at 462, since he threw these notices away. See DSMF ¶¶ 58–81. Thus, Plaintiff's GBL § 349 claims fail because they expired before he filed this action.

### d.   Judiciary Law § 487 Claims

Defendants also argue that Plaintiff's claims under Judiciary Law § 487 are time-barred. See Defs.' Mot. at 9–10. Claims under Judiciary Law § 487 must be commenced within six

years. See Melcher v. Greenberg Traurig, LLP, 23 N.Y.3d 10, 15 (N.Y. 2014). Moreover, the

statute applies only to deceit or collusion in a pending judicial proceeding. See Bill Birds, Inc. v.

Stein Law Firm, P.C., 35 N.Y.3d 173, 178–79 (N.Y. 2020). The only judicial proceeding

involved in this action was the Collection Action, which concluded with the entry of the

Judgment on February 2, 2009, see DSMF ¶ 46, more than nine years before Plaintiff filed this

case. Accordingly, Plaintiff's Judiciary Law § 487 claims are time-barred.

### e.   State Law Fraud Claims

Defendants argue that Plaintiff's state law fraud claims are time-barred. See Defs.' Mot.

at 10. "The Statute of Limitations for actual fraud is six years from the commission of the fraud

or two years from the time of discovery." Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 663,

n.1 (S.D.N.Y. 2007) (quoting Mech. Plastics Corp. v. Rawlplug Co., 501 N.Y.S.2d 85, 88 (N.Y.

App. Div. 1986)).

Plaintiff states that "fraud began with the purchase of [P]laintiff's alleged debt, and

include any attempts to plan, and conspire to obtain a default judgment . . . although they had no

legal right to do so." SAC ¶ 103. Accordingly, Plaintiff's claims focus on the "pre-[J]udgment"

conduct of Defendants, which was more than six years before commencement of this action in

2018. Id. Plaintiff received notice of the Judgment shortly after it was issued, so the "time of

discovery" was far more than two years before the start of this action. Malmsteen, 477 F. Supp.

2d at 663; see DSMF ¶¶ 46, 56–62. Accordingly, any claim based on pre-Judgment conduct is

time-barred.

Plaintiff disputes that his cause of action for fraud is limited to conduct preceding entry

of the Judgment in February 2009, but he offers no meritorious argument as to why the doctrine

of fraudulent concealment would preserve such claims. See Pl.'s Resp. at 18–19. For instance,

Plaintiff cites the Assurance of Discontinuance, but makes no claim that he was included in the OAG's list of involved cases—only that his case "should appear" on the list. Id. at 19. Defendants' Statement of Material Facts, however, states that Plaintiff's case was not on the OAG list. See DSMF ¶ 110. In any event, the Assurance of Discontinuance indicates that it "may not be used as evidence in any judicial . . . hearing" and "creates no liability or responsibility from Strumpf . . . to any third party based on compliance with any term, condition or provision." AOD at ¶ 48. Accordingly, the Court finds that Plaintiff's fraud claims are limited to the events preceding the Judgment, which are barred by the statute of limitations. Accordingly, Defendants' Motion on the state law fraud claims is granted.

### 3. Merits of Remaining Claims

Defendants argue that Plaintiff's remaining claims fail on the merits and should be dismissed. Defendants' request is granted in part and denied in part.

#### a. The FDCPA Claims

Defendants contend that the alleged FDCPA violations that are not time-barred nevertheless fail for multiple reasons. See Defs.' Mot. at 10–15.

##### i. Commercial Debt under the FDCPA

As an initial matter, Defendants argue that Plaintiff's FDCPA claims fail because the FDCPA does not cover Plaintiff's "commercial" debt. See Defs.' Mot. at 10–11. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Therefore, "actions arising out of commercial debts are not covered by the protective provisions of the FDCPA." Goldman v. Cohen, 445 F.3d 152, 154 n.1 (2d Cir. 2006); see also Scarola

Malone & Zubatov LLP v. McCarthy, Burgess & Wolff, 638 F. App'x 100, 102–03 (2d Cir. 2016) (summary order) (concluding that debt arising out of transactions related to a business telephone account was commercial debt not covered by the FDCPA).

Defendants' Statement of Material Facts states that "[a]ll credit card debt incurred by [Plaintiff] prior to 2003 was for business purposes." DSMF ¶ 9. Defendants support this statement by referring to Plaintiff's deposition, where he stated that the Debt he accumulated, which U.S. Equities purchased, was "all business." Carroll Dep. at 237:17–238:8 ("Q: . . . Did you use credit cards for a particular purpose? A: I would say, if I remember right, it was all business.").

In opposition, Plaintiff submitted a Declaration in which he asserts that the words "all business" is "just something [he says] to indicate that [he] was serious about a matter (All Business) that indicated an emphasis on hard work instead of pleasure, or to describe a workaholic as being impersonal." Dkt. No. 101 at 40–43 ("Carroll Declaration") ¶ 5. Plaintiff notes that his "use of this phrase may have evolved due to the way [his] brother treated [him] all of [his] life." Id. ¶ 6. Plaintiff asserts that he "purchased very few business items with any of [his] credit cards." Id. ¶ 20. Plaintiff further states that he does not specifically recall what the the Debt was used for, that he had several credit cards at the time, and that he was using his credit cards to pay for things such as gasoline for personal travel, a used mobile home, well drilling, electrical and plumbing services, and homeowner's and car insurance. See id. ¶¶ 10, 12–13.

Although the Court deems properly supported facts set forth in Defendants' Statement of Material Facts as true, Plaintiff's use of the phrase "all business" does not entirely support the statement that all his credit card debt was "commercial." Coupled with Plaintiff's contention that he used his credit cards at the time for non-business expenses, the Court finds that there is a

genuine dispute of material fact regarding the nature of the Debt. Accordingly, Defendants have failed to carry their burden for summary judgment on this issue.

## ii.   *Enforcing a Judgment Purportedly Obtained by Fraud*

Defendants argue for summary judgment on Plaintiff's FDCPA claim regarding "[e]nforcing a judgment that [D]efendants knew or reasonably should have known was obtained by fraud." SAC ¶ 49(b).

Section 1692e of the FDCPA states, in relevant part, that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "The practice of 'sewer service,' which includes filing a false affidavit of service, violates the FDCPA, including 1692e and 1962f." Lewis, 2022 WL 2531817, at *12 (internal quotation marks omitted); Kong v. Strumpf, No. 17-CV-3514, 2018 U.S. Dist. LEXIS 164537, at *8 (S.D.N.Y. Sept. 24, 2018) ("Of course, courts have recognized that an attempt to enforce *a fraudulently-obtained* default judgment may be sufficient to state an FDCPA claim.") (collecting cases). However, "[i]n New York, a process server's affidavit creates a rebuttable presumption of valid service." Kong, 2018 U.S. Dist. LEXIS 164537, at *9.

Here, Plaintiff offers nothing more than speculation to support the proposition that the Judgment was fraudulently obtained. Plaintiff implies that Strumpf was aware that SYR used sewer service for the Collection Action because the Assurance of Discontinuance required Strumpf to disclose any cases in which she received default judgments based upon SYR's sewer service during the period that included the Collection Action. See Pl.'s Resp. at 19. According to Plaintiff, since Strumpf used SYR for service in this action, Strumpf should have identified the Collection Action and potentially faulty service to Plaintiff, which would have afforded Plaintiff the opportunity to try to vacate the default judgment. See id. However, Plaintiff's argument

ignores the fact that the Assurance of Discontinuance was entered on April 29, 2011, see AOD at 14, yet Strumpf avers in her Declaration that "until Plaintiff contested service in 2017, I did not recall who had served him with the Collection Action's Summons and Complaint or how he had been served," Strumpf Decl. ¶ 71, see also DSMF ¶ 111. Thus, Plaintiff proceeds only on speculation that Strumpf was aware that SYR used sewer service in relation to the Collection Action. Such speculation is insufficient to rebut a "presumption of valid service" and establish a genuine dispute of material fact regarding the alleged fraud. Kong, 2018 U.S. Dist. LEXIS 164537, at *9 ("Plaintiff merely asserts that Defendants attempted to enforce a duly issued New York Supreme Court judgment obtained on the basis of service that Defendants incorrectly believed to be effective. Not surprisingly, courts around the country have recognized that such conduct does not violate Sections 1692e or 1692f.") (collecting cases).

Accordingly, the Court grants summary judgment to Defendants on the FDCPA claim relating to "[e]nforcing a judgment that [D]efendants knew or reasonably should have known was obtained by fraud." SAC ¶ 49(b).

### iii.   Filing of the Transcript of Judgment

Defendants argue that the non-filing of the Transcript of Judgment with the Ulster County Clerk is not a FDCPA violation because it resulted from a "bona fide error" pursuant to 15 U.S.C. § 1692k(c). Defs.' Mot. at 13–14. Plaintiff alleges that Defendants violated the FDCPA by failing to file the Transcript of Judgment with the Ulster County Clerk or Nassau County Clerk prior to seeking execution by the Nassau County Sheriff, and "[p]resenting these fraudulent documents and making false and deceptive representations . . . to the Nassau County Sheriff's Department, representing to them that the aforementioned default judgment was just as legitimate and trustworthy as other judgments, so as to obtain a judgment execution." Id. at ¶

49(c); see also id. ¶ 49(g) ("Defendants violated the FDCPA by failing to file a transcript of the [J]udgment with the Ulster County Clerk prior to seeking execution of the Judgment by a sheriff.").

Section 1692e specifically prohibits false representation of "the character, amount, or legal status of any debt" and the use of deceptive means "to collect or attempt to collect any debt." 15 U.S.C. § 1692e(2)(A), 1692e(10). Under the FDCPA, "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To be entitled to the bona fide error defense, "a debt collector need not demonstrate that its procedures for avoiding [FDCPA] violations are fool proof, but rather, must only show that its procedures constitute a reasonable precaution." Puglisi, 822 F. Supp. 2d at 226–27 (internal quotation marks omitted).

Defendants argue they are entitled to the bona fide error defense because Strumpf's procedures were "eminently reasonable," and the failure to file the Transcript of Judgment was an "innocent mistake." Defs.' Mot. at 13–14. Plaintiff contends that the failure to file does not qualify as a bona fide error because "[i]t is a disputable issue of material fact whether the non-filing was an innocent mistake or done purposely to avoid scrutiny by the Ulster County Clerk," who "would likely have scrutinized the judgment and determined that the default judgment was bogus." Pl.'s Resp. at 21.

The Court finds that, although Defendants indicate that this was an isolated error, the circumstances underlying this case create a question of material fact as to whether Strumpf's precautions here were reasonable. Although she was not aware at the time, Strumpf was later

informed that she was a party to debt collection actions which involved sewer service from SYR. See AOD ¶ 20. Even though "Strumpf did not recall who had served [Plaintiff in] the Collection Action," DSMF ¶ 111, Defendants used SYR's services in numerous actions during that time period. See AOD ¶ 20. As such, Strumpf was on notice that SYR submitted fraudulent affidavits of service during the time period in which the Collection Action occurred. Therefore, a reasonable factfinder could conclude that under such circumstances, it was unreasonable for Strumpf to merely rely upon the notes log entry. See Miller v. Upton, Cohen & Slamowitz, 687 F. Supp. 2d 86, 95 (E.D.N.Y. 2009) ("[T]he Second Circuit held that [a firm] may be liable if the evidence demonstrated that [the firm] 'reviewed the collection files with such speed that no independent judgment could be found to have been exercised, and then issued form collection letters with the push of a button.'") (quoting Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 306 (2d Cir. 2003)). Given these factual questions, Defendants' Motion regarding the claims surrounding the filing of the Judgment, see SAC ¶¶ 49(c), (g), is denied.

### iv. Meaningful Attorney Involvement

Defendants argue that they are entitled to the bona fide error defense on Plaintiffs FDCPA claims relating to conducting a meaningful attorney review, and that the Court should therefore grant summary judgment on these claims. See Defs.' Mot. at 12–13. Plaintiff argues Defendants violated the FDCPA by failing to conduct a meaningful attorney review of their files before collecting on the Judgment. See SAC ¶ 49(d); Pl.'s Resp. at 20.

"[A] debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." Villalba v. Houslanger & Assocs., PLLC, No. 19-CV-4270, 2022 WL 900538, at *8

(E.D.N.Y. Mar. 28, 2022) (quoting <u>Wagner v. Chiari & Ilecki, LLP</u>, 973 F.3d 154, 168 (2d Cir. 2020)). "Courts in this Circuit have explained that 'the mere existence of generic procedures is not enough; instead, the debt collector must show . . . that it took precautions meant to eliminate the specific error complained of by the plaintiff.'" <u>Id.</u> (quoting <u>Guzman v. Mel S. Harris & Assocs., LLC</u>, No. 16-CV-3499, 2018 WL 1665252, at *10 (S.D.N.Y. Mar. 22, 2018)).

Defendants contend that an attorney seeking to enforce a judgment can make a determination that a judgment is valid "without re-inspecting the underlying case documents," since "a judgment is valid until set aside." Defs.' Mot. at 13. Plaintiff argues Strumpf should have reviewed the Judgment, because "she would have realized . . . that the [Kingston City Court] transcript was never provided to the Ulster County Clerk." Pl.'s Resp. at 20.

The Court finds that there is a genuine dispute of material fact as to whether Defendants conducted a meaningful review. Defendants point to no "precautions meant to eliminate the specific error." <u>Villalba</u>, 2022 WL 900538, at *8. Rather, they cite <u>Musah v. Houslanger & Assocs., PLLC</u>, 962 F. Supp. 2d 636 (S.D.N.Y. 2013) to argue that the mere existence of the default judgment "obviate[d] the need for further review of [Plaintiff's] case file." Defs.' Mot. at 13; (quoting <u>Musah</u>, 962 F. Supp. 2d at 641). However, "<u>Musah</u> arose in a different context and said only that 'an *attorney's determination* that there exists a *valid* judgment *may* obviate the need for further review of a case file.'" <u>Villalba</u>, 2022 WL 900538, at *8 (quoting <u>Musah</u>, 962 F. Supp. 2d at 641). Indeed, the Court finds that Plaintiff presented Defendants with reasons to conduct a meaningful review of the Judgment.

On August 17, 2017, after Plaintiff's proposed Order to Show Cause to vacate the Judgment and otherwise challenge its execution had been filed and denied by the Kingston City Court, Plaintiff spoke with Strumpf's office. <u>See</u> DSMF ¶ 102. The parties then exchanged

emails on August 22, 2017, "when Plaintiff sent Stumpf a series of emails threatening legal action." Id. ¶ 104. It was only after these interactions, on August 23, 2017, that Strumpf's office received a check from the Nassau County Sheriff in the amount of $47,779.06. Id. ¶ 105.

Both Plaintiff's Order to Show Cause in the Kingston City Court and his email to Strumpf's office raise questions about the validity of the Judgment, including, *inter alia*, whether the Summons and Complaint in the Collection Action were properly served on Plaintiff, whether the Kingston City Court had personal jurisdiction over Plaintiff, whether the Complaint sought more than the statutory limit of the Kingston City Court, and whether Defendants were seeking to enforce the Judgment against assets that were exempt from creditor judgment collections under New York State law. See generally Dkt. No. 90-40. Even if Plaintiff's allegations were incorrect, they raised a reason to inquire further into the validity of the Judgment before Defendants collected on it, especially when Strumpf was aware of SYR's sewer service in many collection actions during that period. This raises a material question of fact as to whether Defendants violated the FDCPA by executing the Judgment after these concerns were brought to Strumpf's attention. See Villalba, 2022 WL 900538, at *8 ("[The d]efendants here purchased and sought to enforce a default judgment that stemmed from a facially suspect affidavit of service and resembled thousands of default judgments the same seller apparently had obtained through 'fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law, or other illegalities.' . . . Given these serious and apparent concerns regarding the validity of the debt underlying the judgment they purchased, [the d]efendants cannot simply rely on the existence of that judgment to avoid liability.") (citation omitted). Accordingly, Defendants' Motion on this ground is denied.

29

*v.  Prior Notice of the Judgment*

Defendants contend they are entitled to summary judgment on the FDCPA claims related to Defendants alleged failure to give Plaintiff notice of the Judgment or Debt before restraining his NFCU account in 2017. See Defs.' Mot. at 12–13; SAC ¶ 49(f). The Court agrees. As noted above, the undisputed facts indicate that Plaintiff received prior notice. See *supra* Section II.A.2.a.i. Accordingly, Defendants' Motion on this claim is granted.

*vi.  CPLR § 5222 and Exempt Funds*

Defendants argue they are entitled to summary judgment on the FDCPA claims related to CPLR § 5222 and Exempt Funds. See Defs.' Mot. at 14–15. Plaintiff alleges that Defendants violated the FDCPA "by failing to provide him with a copy of the [] [S]ubpoena and restraining notice as required by New York law," which prevented him from both "seeking vacatur of the default judgment on jurisdictional grounds" and "interposing a claim that the funds in his bank account were exempt." SAC ¶¶ 49(i)–(j). Plaintiff's argument fails on multiple grounds.

As an initial matter, the provisions of CPLR § 5222-a command "the banking institution," rather than the judgment creditor, to "serve the [restraining] notice and forms by first class mail to the last known address of the judgment debtor." CPLR § 5222-a(b)(3). There is no dispute that Strumpf served the requisite forms on NFCU. See DSMF ¶ 92. Thus, any claim Plaintiff might have in this regard is against NFCU, not Defendants.

Moreover, the status of the funds removed from Plaintiff's NFCU account is immaterial given that it was NFCU's obligation to forward Plaintiff the requisite Exemption Claim Forms and that Plaintiff had the opportunity to present his arguments to the Kingston City Court. See DSMF ¶ 100 (noting Plaintiff filed the Order to Show Cause with the Kingston City Court).

Additionally, the funds seized from Plaintiff's NFCU account were not exempt assets. See CPLR §§ 5222-a(b)(4) (listing types of exempt funds, including veterans' benefits and not including funds received from Federal Tort Claims Act ("FTCA") claims). The undisputed facts indicate that the funds were derived from a judgment for money damages that Plaintiff obtained in a medical malpractice action under the FTCA. See DSMF ¶¶ 82–91. A judgment for money damages under the FTCA is not analogous to veterans benefits under 38 U.S.C. § 1151. See Mansfield v. Peake, 525 F.3d 1312, 1317 (Fed. Cir. 2008) ("The FTCA and the veterans' benefits system provide two distinct remedies."). Plaintiff has never been granted Section 1151 benefits relating to his FTCA action and, in fact, was affirmatively denied such benefits before he opened the NFCU account. See DSMF ¶¶ 85–89. Therefore, summary judgment is warranted on Plaintiff's FDCPA claims related to CPLR § 5222 and exempt funds.

In summary, the only FDCPA claims that survive summary judgment are those related to filing the Transcript of Judgment in Nassau County court and meaningful attorney involvement. See SAC ¶¶ 49(c), (d), (g).

b.  RICO Claim

Defendants argue that, even if not time-barred, Plaintiff cannot establish a viable RICO claim. The Court finds that summary judgment is warranted on both Plaintiffs substantive and conspiracy RICO claims.

To prevail on a substantive RICO claim, "a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962. To establish a violation of § 1962(c), in turn, a plaintiff must show that a person engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity." Cruz v. FxDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013) (cleaned up).

The undisputed facts indicate that Defendants were not parties to a scheme to systematically obtain default judgments against thousands of defendants through "sewer service" by SYR. See DSMF ¶¶ 36–44. As such, Plaintiff cannot establish an enterprise. Without a common scheme with SYR, Plaintiff's RICO claim depends on a incognizable "attorney-client enterprise" consisting of U.S. Equities and Strumpf. Weaver v. James, No. 10-CV-6609, 2011 WL 4472062, at *3 (S.D.N.Y. Sept. 27, 2011) ("[T]he basic nature of the attorney-client relationship is such that the attorney *represents* the client. It would make little sense to assert that the attorney conducts the affairs of a distinct attorney-client enterprise."). The facts indicate that Strumpf is a sole practitioner, see DSMF ¶ 14, U.S. Equities is her client, see id. ¶¶ 18, 32, and Siegel is the President and sole owner of U.S. Equities, see id. ¶ 17. Thus, Plaintiff's theory of liability would improperly "transform RICO into a mechanism whereby any losing litigant," against whom a money judgment is enforced, "could sue to challenge otherwise privileged and constitutionally protected conduct of the opposing party and opposing counsel." Weaver, 2011 WL 4472062, at *3.

Indeed, without the component of a sewer service scheme, this case falls within the general rule that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018). Aside from the allegation that U.S. Equities purchased Plaintiff's debt for "pennies on the dollar," SAC ¶ 17, which is legal, all Plaintiff has targeted are "baseless litigation activities." Kim, 884 F.3d at 104. Accordingly, even if not time-barred, Plaintiff's RICO claim fails on the merits.

A conspiracy claim under Section 1962(d) cannot survive the dismissal of its substantive RICO counterpart. See e.g., First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004) ("[B]ecause Plaintiffs did not adequately allege a substantive violation of RICO . . . , the District Court properly dismissed Count Six, which alleged a RICO conspiracy in violation of 18 U.S.C. § 1962(d)."). Therefore, because Plaintiff's substantive RICO claim fails, Defendants are also entitled to summary judgment on the conspiracy claim.

> c.   GBL § 349 Claim

Even if not barred by the applicable statute of limitations, Plaintiff's GBL § 349 claim fails on the merits. To prevail on a cause of action under GBL § 349, a plaintiff must prove: (1) "that the challenged act or practice was consumer oriented;" (2) "that it was misleading in a material way;" and (3) "that the plaintiff suffered injury as a result of the deceptive act." Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (quoting Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (N.Y. 2000)).

Plaintiff cannot demonstrate consumer-oriented conduct. Although this first element "does 'not require a repetition or pattern of deceptive behavior,' the plaintiff 'must demonstrate that the acts or practices have a broader impact on consumers at large.'" Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP, 112 F. Supp. 3d 160, 166 (S.D.N.Y. 2015) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (N.Y. 1995)). "[T]he prosecution of an individual lawsuit … [is] not commercial activity directed at consumers generally, nor [does] it have any ramifications for the public at large." Id. at 167 (cleaned up). As Plaintiff's individual lawsuit does not demonstrate consumer-oriented conduct, Defendants are entitled to summary judgment on Plaintiff's GBL §349 claim.

d.  State Law Fraud Claim

Even if not barred by the applicable statute of limitations, Plaintiff's fraud claim fails on the merits. "The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559 (N.Y. 2009).

Plaintiff fails to present a viable fraud claim. As noted above, any alleged fraud is limited to pre-Judgment conduct, and the Court does not find such conduct fraudulent. See supra Section IV.A.2.iii. Indeed, Plaintiff cannot establish Defendant had "knowledge" of any falsity or "intent to induce reliance." Eurycleia Partners, LP, 12 N.Y.3d at 559. The undisputed facts establish that Strumpf was not aware of whether SYR engaged in sewer service in this case, see DSMF ¶¶ 40–44, and Strumpf sent Plaintiff repeated notices concerning the Judgment. See DSMF ¶¶ 56–71, 76–81. Therefore, Plaintiff cannot establish a genuine dispute of material fact with regard to the fraud claims.

Plaintiff asserts that Defendants' post-Judgment conduct was fraudulent, alleging that "during email and telephone conversions between [P]laintiff and [D]efendants' office, [D]efendants and/or their employee(s) communicated misrepresentations . . . which were made for the purpose of inducing [P]laintiff to rely on them." See SAC ¶ 105. Apart from their vagueness, these allegations do not present any actual "reliance" or "damages." Eurycleia Partners, LP, 12 N.Y.3d at 559. Moreover, the facts indicate that Plaintiff did not rely on anything Defendants or their employees may have said, as he had already filed his Order to Show Cause by the time he spoke to anyone at Strumpf's office. See DSMF ¶¶ 100–104. Accordingly, since Plaintiff fails to establish a viable claim for fraud, Defendants are entitled to summary judgment on Plaintiff's fraud claim.

34

In summary, Defendants' Motion is granted for all allegations except the FDCPA claims related to filing the Transcript of Judgment in Nassau County court and meaningful attorney involvement. See SAC ¶¶ 49(c), (d), (g).

### B.  Plaintiff's Motion

Plaintiff's Motion is denied in all respects. For reasons discussed above, only certain FDCPA claims remain. Nothing in Plaintiff's Motion changes this finding. Indeed, Plaintiff's Motion does little more than recite the allegations and legal conclusions in his Second Amended Complaint without evidentiary support. See generally Pl.'s Mot. Plaintiff's Statement of Material Facts is unsworn and lacks citations to admissible evidence in the record, which is far from supplying uncontroverted evidence sufficient for judgment in Plaintiff's favor on the remaining FDCPA claims. See L.R. 56.1(a) ("Each fact listed shall set forth a specific citation to the record where the fact is established."). This is insufficient to support a motion for summary judgment. See Caro Cap., LLC v. Koch, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023) ("It is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment.") (collecting cases). Accordingly, Plaintiff's Motion is denied in its entirety.

### V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for summary judgment, Dkt. No. 89, is **DENIED**; and it is further

**ORDERED**, that Defendants' Motion for summary judgment, Dkt. No. 90-3, is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that all causes of action in the Second Amended Complaint, Dkt. No. 76, are **DISMISSED except** Plaintiff's Fair Debt Collections Practices Act claims related to

Defendants' efforts to collect the debt without first conducting a meaningful attorney review of the case file, SAC ¶ 49(d), and ensuring that the Transcript of Judgment from the Kingston City Court Judgment was properly filed with the Ulster County Clerk, SAC ¶¶ 49(c), (g); and it is further

      **ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

      **IT IS SO ORDERED.**

DATED:      September 27, 2024
                Albany, New York

                                      LAWRENCE E. KAHN
                                  United States District Judge