UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ROBERT CARROLL,

                          Plaintiff,

      v.                                                               1:18-cv-00667 (AMN/PJE)

U.S. EQUITIES CORP., *et al.*,

                          Defendants.

_____

**APPEARANCES:**                                                      **OF COUNSEL:**

**ROBERT CARROLL**
P.O. Box 201
Connelly, New York 12417
Plaintiff, *pro se*

**OFFICE OF LINDA STRUMPF**                          **LINDA STRUMPF, ESQ.**
69 Fox Run
South Salem, New York 10590
*Attorneys for Defendants U.S. Equities,*
*Linda Strumpf, and Hal Siegel*

**KAUFMAN DOLOWICH LLP**                             **ADAM MARSHALL, ESQ.**
135 Crossways Park Drive – Suite 201
Woodbury, New York 11797
*Attorneys for Defendants U.S. Equities,*
*Linda Strumpf, and Hal Siegel*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

       Presently before the Court is a motion by U.S. Equities, Linda Stumpf, and Hal Siegel (collectively, "Defendants") seeking reconsideration of portions of the September 27, 2024

Memorandum-Decision and Order by Senior United States District Judge Lawrence E. Kahn[1] that partially denied Defendants' motion for summary judgment (Dkt. No. 111, "Prior Order"). Dkt. Nos. 114, 126 ("Motion"). Plaintiff opposed the Motion, Dkt. Nos. 118, 128, and Defendants filed a reply in further support, Dkt. No. 129. For the reasons set forth below, the Motion is granted and Plaintiff's remaining claims are dismissed.

## II.  INTRODUCTION[2]

### A. State Court Proceedings and Judgment

In or about January 2007, Defendant U.S. Equities, represented by Defendant Strumpf, acquired the rights to credit card debt owed by Plaintiff, with a principal balance of $11,424.67 ("Debt"). Dkt. No. 111 at 2.[3] In February 2008, Defendant Strumpf commenced an action to collect the Debt in Kingston City Court ("Collection Action"). *Id.* at 3. In February 2009, the Kingston City Court awarded Defendant U.S. Equities a default judgment of $28,681.97 ("Judgment"). *Id.* Thereafter:

> On October 1, 2009, Strumpf "directed her staff to obtain a transcript of the Judgment from the Kingston City Court and to file the same with the Ulster County Clerk. . . . According to Defendants, "[t]he precise steps for [obtaining and filing a transcript of judgment] were set forth in an office manual ['Manual'] prepared by Strumpf, which contained a variety of detailed procedures designed to ensure compliance with federal and state law, including the Fair Debt Collection Practices Act and Article 52 of the New York Civil Practice Law and Rules ['CPLR']." . . . Strumpf's office received a transcript of the Judgment from the Kingston City Court ("Transcript of Judgment"), and, "[p]er the Manual, the employee who received the Transcript of Judgment from the Kingston City Court should have scanned in a copy and then mailed the original to the Ulster County Clerk." . . . Instead, one of Strumpf's employees made an entry in a notes log for the Collection Action stating, "trans filed on 10/21/09." . . . According to Defendants, "this entry appears to be

---

[1] This case was reassigned to the undersigned on November 7, 2024. Dkt. No. 119.

[2] The parties' familiarity with the background of this case is presumed, and only those facts relevant to resolving the Motion are discussed herein.

[3] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

2

erroneous in that Defendants have been unable to independently confirm during the course of this action that the Transcript of Judgment was actually filed with the Ulster County Clerk."

*Id.* at 3-4 (alterations in original) (citations omitted); *see also* Dkt. No. 90-19 (portion of Manual regarding "How to File Transcripts of Judgments").

Between September 2009 and March 2015, Defendant Strumpf and a non-party financial institution sent Plaintiff no fewer than eight letters regarding the Judgment. Dkt. No. 111 at 4.[4]

Sometime in or after May 2016, Plaintiff received a check for approximately $250,000 at one of the addresses to which much of this correspondence had been sent.[5] Dkt. No. 90-31 at 3. In May 2017, Plaintiff deposited this check into an account at Navy Federal Credit Union ("Credit Union"). Dkt. No. 111 at 5. That same month, Defendant Strumpf's office served a subpoena with a restraining notice and exemption claim forms on the Credit Union. *Id.* On June 27, 2017, the Credit Union served a response to the subpoena, advising that it had restrained $50,181.65 in Plaintiff's account. *Id.* at 6.

### B. Execution of the Judgment

Before seeking to execute the Judgment against this amount, Defendant Strumpf reviewed the notes log of the Collection Action to confirm that the Transcript of Judgment had been filed with the Ulster County Clerk.[6] *Id.* Based on the entry "trans filed on 10/21/09," she concluded

---

[4] While Plaintiff has asserted that he did not receive these letters and was never served in the Collection Action, Judge Kahn determined that Plaintiff was deemed to have received these letters based on the "mailbox rule." *Id.* at 13-15.

[5] This amount reflected damages awarded to Plaintiff following a bench trial on his claims of medical malpractice against the United States pursuant to the Federal Tort Claims Act ("FTCA"). *See Carroll v. United States*, 295 F. App'x 382 (2d Cir. 2008), *cert. denied*, 558 U.S. 940 (2009). The judgment amount had been deposited with the Clerk of the United States District Court for the Southern District of New York for a number of years, until Plaintiff requested the amount be paid to him in May 2016. *See* Dkt. No. 90-30; Dkt. No. 90-31.

[6] "When the judgment is that of the supreme court or family court or of a county court, each of which has statewide jurisdiction, Const. Art. VI, § 1(c), the execution can be directed anywhere in

3

that it had. *Id.* Defendant Strumpf then issued an execution to the Nassau County Sheriff's Office ("Sheriff's Office") requesting levy on Plaintiff's account. *Id.*

On July 21, 2017, the Credit Union withdrew $50,181.65 from Plaintiff's account and sent a check for that amount to the Sheriff's Office. *Id.*

On August 10, 2017, Plaintiff sought to vacate the Judgment and enjoin the Sheriff's Office in Kingston City Court. *Id.* A judge denied his proposed order to show cause. *Id.*; *see also* Dkt. No. 90-39 at 5. Plaintiff then contacted someone in Defendant Strumpf's office regarding the Debt. Dkt. No. 111 at 6.

On August 22, 2017, Plaintiff sent Defendant Strumpf's office a series of emails threatening legal action. *Id.*

On August 23, 2017, the Sheriff's Office issued Defendant Strumpf a check from the funds received from the Credit Union, and she issued a satisfaction of judgment on behalf of Defendant U.S. Equities. *Id.* at 6-7.

**C. Procedural History**

In June 2018, Plaintiff commenced this action, alleging numerous claims under federal and state law related to the aforementioned events. Dkt. No. 1. In September 2019, United States Senior District Judge Thomas J. McAvoy partially granted Defendants' motion to dismiss and dismissed numerous claims. Dkt. No. 22.

Plaintiff filed an amended complaint in December 2019. Dkt. No. 27. In March 2020,

---

the state. CPLR 5230(b). *But when the judgment is that of a lower court, it must be transcripted into the equivalent of a supreme court judgment before achieving statewide effect. This merely means obtaining a transcript of the judgment from the clerk of the lower court and filing it with the county clerk of the home county, which makes the lower court judgment the equivalent of a supreme court judgment for enforcement purposes.* CPLR 5018(a)." N.Y. C.P.L.R. § 5320, *Practice Commentaries*, C5230:1 (emphasis added).

4

Judge McAvoy denied Plaintiff's motion to vacate the Judgment and for related damages, finding that the *Rooker-Feldman* doctrine barred such relief. Dkt. No. 50; *see also Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.") (citing 28 U.S.C. § 1257). In November 2020, Judge McAvoy partially granted Defendants' motion to dismiss the amended complaint and again dismissed numerous claims. Dkt. No. 53. In February 2022, Plaintiff filed a second amended complaint by stipulation of the parties. Dkt. No. 76 ("Complaint"); *see also* Dkt. Nos. 73-74.

The parties subsequently cross-moved for summary judgment. Dkt. Nos. 89-90. Both motions were fully submitted by June 2023, following which the case was reassigned to Judge Kahn. Dkt. Nos. 101, 104-05, 108-10.

**D. Prior Order**

On September 27, 2024, Judge Kahn denied Plaintiff's motion for summary judgment "in all respects," finding that the motion "does little more than recite the allegations and legal conclusions in his [Complaint] without evidentiary support." Dkt. No. 111 at 35.

Judge Kahn largely granted Defendants' motion. Specifically, he concluded that Plaintiff's claims under the FDCPA, the Racketeer Influenced and Corrupt Organizations Act, and state law that related to events in the Kingston City Court some 15 years prior were time-barred under the applicable statutes of limitation. *Id.* at 12-22. Judge Kahn further found that to the extent Plaintiff's claims related to the execution of the Judgment in 2017, they largely failed as a matter of law. *Id.* at 22-34. However, as to certain of Plaintiff's FDCPA claims relating to the execution of the Judgment, Judge Kahn denied Defendants' motion. *Id.* at 25-29, 35.

5

Following the decisions by Judge McAvoy and Judge Kahn, Plaintiff's only remaining claims, against any defendant, are that Defendants violated the FDCPA when they sought to execute the Judgment in 2017 (i) without meaningful attorney review, and (ii) without filing the Transcript of Judgment with the Ulster County Clerk. Dkt. Nos. 22, 53, 111; *see also* Dkt. No. 76 at ¶¶ 49(c)-(d), (g).

### E. Instant Motion

On October 18, 2024, Defendants moved for reconsideration with respect to the Prior Order. Dkt. No. 114. On October 25, 2024, Plaintiff filed a notice of interlocutory appeal, Dkt. No. 115, before opposing the Motion on October 31, 2024, Dkt. No. 118. Following reassignment, this Court issued a text order finding that it retained jurisdiction because Plaintiff's interlocutory appeal was procedurally improper. Dkt. No. 121. The Second Circuit has also issued a mandate finding that it lacked jurisdiction as to the interlocutory appeal. Dkt. No. 125 ("This Court has determined sua sponte that it lacks jurisdiction over this appeal because the district court has not issued a final order as contemplated by 28 U.S.C. § 1291) (citing *Petrello v. White*, 533 F.3d 110, 113 (2d Cir. 2008)). The Court also requested, and has since received, supplemental briefing with respect to the Motion, Dkt. Nos. 126, 128-29, which Defendants assert should be analyzed under Rule 54(b) of the Federal Rules of Civil Procedure, *see* Dkt. No. 126 at 3.

### III. STANDARD OF REVIEW

Given that the Court had not entered final judgment at the time Defendants filed the Motion, "the Court believes that [the] request for reconsideration is [ ] properly analyzed under Federal Rule of Civil Procedure 54(b), which permits federal district courts to reconsider an interlocutory order 'at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Bradshaw v. Fletcher*, No. 19-cv-0428, 2022 WL 22889197,

6

at *3 (N.D.N.Y. Feb. 7, 2022) (first quoting Fed. R. Civ. P. 54(b); and then citing *Harris v. Millington*, 613 F. App'x 56, 58 (2d Cir. 2015)).

As a general matter, "reconsideration is warranted where the moving party can show the court 'overlooked' facts or controlling law that 'might reasonably be expected to alter the conclusion reached by the court.'" *Zhang v. Ichiban Grp., LLC*, No. 17-cv-00148, 2022 WL 813956, at *1 (N.D.N.Y. Mar. 17, 2022) (quoting *Hum. Elecs., Inc. v. Emerson Radio Corp.*, 375 F. Supp. 2d 102, 114 (N.D.N.Y. 2004)); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). And "'[b]ecause the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law,' and may do so *sua sponte*." *Grimaldi v. Promuto*, No. 13-cv-1692, 2014 WL 12657039, at *1 (S.D.N.Y. Oct. 17, 2014) (quoting *Nabisco v. Warner-Lambert Co.*, 32 F. Supp. 2d 690, 694 (S.D.N.Y. 1999)). "Whether such revision is appropriate in any given case is within the sound discretion of the trial judge." *Hogan v. Cnty. of Lewis, N.Y.*, No. 11-cv-0754, 2014 WL 118964, at *6 (N.D.N.Y. Jan. 10, 2014) (quoting *Acha v. Beame,* 570 F.2d 57, 63 (2d Cir. 1978)); *see also West v. Harkness*, No. 17-cv-0621, 2021 WL 5321958, at *4 (N.D.N.Y. Nov. 16, 2021).

Finally, the Court remains mindful that "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## IV. DISCUSSION

"The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002). In general, to establish an FDCPA claim, a plaintiff "must demonstrate that: (1) the plaintiff is a person who was the object of efforts to collect a consumer debt; (2) the defendant is a debt collector as defined in the statute; and (3) the defendant has engaged in an act or omission in violation of the FDCPA." *Felberbaum v. Sequium Asset Sols.*, No. 21-cv-9513, 2023 WL 167559, at *3 (S.D.N.Y. Jan. 11, 2023) (citation omitted).

The Motion raises three primary arguments in support of reconsideration: (i) the FDCPA does not apply to the Debt, *see* Dkt. No. 126 at 4-5; Dkt. No. 129 at 2-3; (ii) Defendants had no communications with Plaintiff in 2017 that required meaningful attorney review and, to the extent they did, Defendant Strumpf performed such a review, *see* Dkt. No. 114 at 6-10; and (iii) Defendants have established a bona fide error defense with respect to the apparent non-filing of the Transcript of Judgment in 2009, *see* Dkt. No. 126 at 5–7; Dkt. No. 129 at 3-6. Below, the Court addresses each of Defendants' primary arguments in turn.

### A. Nature of the Debt

Defendants first argue that the FDCPA does not apply to the Debt. Dkt. No. 126 at 4-5; Dkt. No. 129 at 2-3. The FDCPA "applies only in instances where a debt collector attempts to collect a 'debt' within the meaning of the Act." *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) (quoting *Degrosiellier v. Solomon & Solomon, P.C.*, No. 00-cv-1065, 2001 WL 1217181, at *3 (N.D.N.Y. Sept. 27, 2001)). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of

8

the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5). As the Second Circuit has explained, "[w]hat matters in the context of an FDCPA claim is the asserted basis for the obligation to pay." *Paushok v. Ganbold*, No. 21-964, 2022 WL 1421844, at *2 (2d Cir. May 5, 2022) (summary order) (alteration in original) (quoting *Beauvoir v. Israel*, 794 F.3d 244, 248 (2d Cir. 2015)). And "[t]he FDCPA does not cover 'actions arising out of commercial debts.'" *Scarola*, 638 F. App'x at 102 (quoting *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006), *superseded by statute on other grounds as stated in Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212-13 (2d Cir. 2017)).

Here, the Court agrees with Defendants that Plaintiff's deposition testimony established that the FDCPA does not apply to the Debt, and that Plaintiff's subsequent declaration contradicting his deposition testimony does not suffice to create a genuine dispute of material fact on this issue. During his deposition, Plaintiff testified as follows:

> Q: By the way, off topic, but the credit card debt that you accrued, were you spending money building your business with the computers, or was it groceries? Did you use credit cards for a particular purpose?
>
> A: I would say, if I remember right, it was all business, and a lot of this stuff that I bought was never -- you know, I had a dream of, I am going to buy this equipment -- for a while I was buying from a company called On Sale, and they were strictly online, and the more you bought the better your chances of winning the auction, like a Dutch auction. So I would buy ten hard drives, and I would sell them on eBay, and eBay got worse and worse. The charges just got so bad, you know. So you can't do that. So many years ago I was using a credit card, but I would buy equipment with the anticipation of, well, I'm going to do this with it, and I never did it. It all went out in the garbage. . . . It wasn't really for food. I live very simply and I don't eat that much. Like a lot of it was for business, as a d/b/a and sole proprietor, and stuff. It was not incorporated or anything like that, but I never really got a chance to turn it around.

Dkt. No. 90-8 at 237:17-238:22. In opposition to summary judgment, Plaintiff submitted a declaration asserting that his characterization of "all business" "was just something I say to

9

indicate that I was serious about a matter (All Business) that indicated an emphasis on hard work instead of pleasure, or to describe a workaholic as being impersonal." Dkt. No. 101 at 40, ¶ 5. Plaintiff further claimed that "[i]t is most likely that I used just one or maybe two cards for my [ ] business," *id.* at 41, ¶ 10, and went on to describe a number of his business endeavors, *see id.* at 42, ¶ 14 ("I tried buying computer parts online to resell on Ebay, but the listing and commission fees were too high and I stopped reselling on Ebay. I also would occasionally purchase computer items for a local business my friends own to replace components of their POS system."); at 43, ¶ 18 ("For a couple of years I sold beads and jewelry . . . . My job was to take photos of the items and list them on Ebay, paying the fees with a credit card."). Plaintiff concluded that "[a]lthough I may have exaggerated my success as a businessman by saying 'all business', none of my endeavors were very successful[.]" *Id.* at 43, ¶ 20.

    Defendants assert that Plaintiff's declaration should be disregarded pursuant to the sham issue of act doctrine. Dkt. No. 126 at 4-5. The Prior Order did not address the sham issue of fact doctrine. *Compare* Dkt. No. 111 at 23-24*, with In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) ("[W]e hold that the District Court was entitled to disregard [the witness]'s new testimony . . . based on the 'sham issue of fact' doctrine, which prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony.") (citation omitted). The Court agrees with Defendants that the declaration Plaintiff submitted in opposition to summary judgment largely contradicts Plaintiff's deposition testimony regarding the nature of the Debt and, to that extent, should be disregarded. *See, e.g., Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony.")

10

(collecting cases).

Plaintiff argues that the Debt is nonetheless presumptively covered by the FDCPA in the absence of documentary evidence to the contrary from Defendants. Dkt. No. 128 at 5. This argument is unavailing, particularly at summary judgment. *See, e.g., Rosa v. Mandarich Law Grp., LLP*, No. 22-cv-4720, 2024 WL 871209, at *6 (S.D.N.Y. Feb. 29, 2024) ("In the Second Circuit, simply because '. . . collection efforts were targeted at an individual' does not mean the debt should automatically be deemed personal rather than commercial.") (quoting *Scarola*, 638 F. App'x at 103); *Paushok*, 2022 WL 1421844, at *2 ("[Plaintiff]'s conclusory assertion that the purported debt arose from a consumer transaction, rather than a commercial one, is insufficient to support a viable claim under the FDCPA.") (first citing *Kirch v. Liberty Media Corp.*, 440 F.3d 388, 398 (2d Cit. 2006); and then citing *Scarola*, 638 F. App'x at 103); *see also Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.") (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).

In sum, Plaintiff's sworn testimony and subsequent declaration fail to raise a question of material fact that the Debt is covered by the FDCPA. *Scarola*, 638 F. App'x at 102. Accordingly, the Court grants the Motion on this basis.

### B. Meaningful Attorney Review

Defendants next argue that the Prior Order overlooked the fact that Plaintiff's meaningful attorney review claim fails as a matter of law because the claim is not tied to any specific communications and, regardless, Defendant Strumpf conducted any necessary review. Dkt. No. 114 at 6-10. As a general matter, the FDCPA "prohibits debt collectors from making the 'false representation or implication that any individual is an attorney or that any communication is from

an attorney,' . . . where an attorney has not conducted a 'meaningful review' of the individual's account[.]" *Felberbaum v. Mandarich Law Grp., LLP*, No. 22-431, 2023 WL 1943107, at *1 (2d Cir. Feb. 13, 2023) (summary order) (first quoting 15 U.S.C. § 1692e(3); and then quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 295 (2d Cir. 2003)). And "[a]n attorney who does not engage in a meaningful review of the account must include with any collection letter a disclaimer that 'make[s] clear even to the least sophisticated consumer that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney.'" *Id.* (second alteration in original) (quoting *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005)).

The Court agrees with Defendants that there is no evidence in the record of any communication that includes a "false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3); *Musah v. Houslanger & Assocs., PLLC*, No. 12-cv-3207, 2012 WL 5835293, at *1 n.1 (S.D.N.Y. Nov. 16, 2012) ("Contrary to Plaintiff's suggestion, 15 U.S.C. § 1692e(3) does not mandate a 'meaningful review of the court file,' . . . but rather simply prohibits '[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney.'") (dismissing FDCPA claims relating to information subpoena and restraining notice issued by attorney); *see also* Dkt. No. 90-40; Dkt. No. 22 at 19 ("To the extent Plaintiff asserts an FDCPA claim on the theory of lack of meaningful attorney involvement under 15 U.S.C. § 1692e(3), the claim is dismissed as abandoned and for lack of merit."). Regardless, Defendant Strumpf's uncontroverted familiarity with the Debt and Defendants' collection efforts therewith, as well as the time she spent reviewing the file in connection with those efforts, establish that she conducted any necessary review in this particular case. Dkt. No. 90-5 at ¶¶ 42-67; *see also Mandarich Law*, 2023 WL

12

1943107, at *1 ("We have declined to establish a bright-line test for determining whether an attorney's review is sufficiently 'meaningful,' and have instead directed courts to consider 'what information the [attorney] reviewed, how much time was spent reviewing [the] plaintiff's file, and whether any legal judgment was involved with the decision to send the [collection] letters.'") (alterations in original) (quoting *Miller*, 321 F.3d at 307); *Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 641 (S.D.N.Y. 2013) (noting that "ordinarily an attorney's determination that there exists a valid judgment may obviate the need for further review of a case file").

Accordingly, the Court grants the Motion on this alternative basis, as well.

### C. Bona Fide Error Defense

Defendants finally argue that they have established a bona fide error defense with respect to Plaintiff's FDCPA claim in connection with the apparent non-filing of the Transcript of Judgment. *See* Dkt. No. 126 at 5-7; Dkt. No. 129 at 3-6. In opposition, Plaintiff contends that Defendants have not established such a defense and that fact issues should preclude summary judgment. *See* Dkt. No. 128 at 2-3.

The bona fide error defense is set forth within the FDCPA and "provides that a debt collector is not liable in an action brought under the Act if she can show 'the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010) (quoting 15 U.S.C. § 1692k(c)). To establish the defense, a debt collector "[']must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error.'" *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 168 (2d Cir. 2020) (quoting *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1352-53 (11th Cir.

2009)).

The Court agrees with Defendants that the Prior Order "conflated distinct claims" in analyzing the applicability of a bona fide error defense. Dkt. No. 126 at 6. The only FDCPA claim on which Defendants invoked the defense was related to the Transcript of Judgment, not service of process in the Collection Action. *Id.* In any event, the Prior Order determined that Plaintiff's FDCPA claims related to service of process in the Collection Action were time-barred, Dkt. No. 111 at 12-18, and additionally failed on the merits, *id.* at 24-25.

As summarized earlier, Defendants presented uncontroverted evidence at summary judgment regarding their procedures for obtaining and filing a transcript of judgment, including a multipage excerpt from their Manual; the training office staff received and the documentation office staff were required to create; as well as the specific documented steps taken with respect to the Transcript of Judgment here. *See* Section II.A, *supra*; Dkt. No. 90-2 at ¶¶ 19-20, 25-26, 47-55; Dkt. No. 90-19; Dkt. No. 90-12. While an entry in the notes log stating "trans filed on 10/21/09" appears to have been erroneous, Defendants also indicated that this "is the only error of its kind" since utilizing a custom-made electronic case management system beginning in the early 2000s. Dkt. No. 90-2 at ¶¶ 19, 53-55. Plaintiff's cursory argument that Defendants' procedures were not reasonably adapted to avoid such an error is thus unpersuasive. *See* Dkt. No. 128 at 2; *Puglisi v. Debt Recovery Sols., LLC*, 822 F. Supp. 2d 218, 226-27 (E.D.N.Y. 2011) ("[W]hen attempting to show that he is entitled to the bona fide error defense, a debt collector 'need not demonstrate that its procedures for avoiding [FDCPA] violations are 'fool proof,' but rather, must only show that its procedures constitute a 'reasonable precaution.'") (second alteration in original) (quoting, *inter alia*, *Katz v. Asset Acceptance, LLC*, No. 05-cv-2783, 2006 WL 3483921, at *2 (E.D.N.Y. Nov. 30, 2006)).

Given this factual record, the Court finds that Defendants have established a bona fide error defense with respect to Plaintiff's FDCPA claim relating to the apparent non-filing of the Transcript of Judgment. *See Wagner*, 973 F.3d at 168. Accordingly, the Court grants the Motion on this alternative basis, as well.

V.   **CONCLUSION**

In sum, because the Prior Order reached clearly erroneous results on the issues outlined above, Defendants have demonstrated that reconsideration is warranted and the Motion is granted. *Zhang*, 2022 WL 813956, at *1.

Accordingly, the Court hereby

**ORDERS** that Defendants' motion for reconsideration, Dkt. No. 114, is **GRANTED** and all of Plaintiff's remaining claims are **DISMISSED**; and the Court further

**ORDERS** that the Clerk shall enter judgment against Plaintiff accordingly; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules, and close this case.[7]

**IT IS SO ORDERED.**

Dated: March 27, 2025
Albany, New York

_____
Anne M. Nardacci
U.S. District Judge

---

[7] The Clerk shall also provide Plaintiff with copies of all unreported decisions herein.

15